**Thomas CRUZ RAMOS, Plaintiff,**

v.

**BROTHER INTERNATIONAL CORPORATION, Defendant.**

No. 77–1063.

United States District Court, D. Puerto Rico.

Feb. 28, 1978.

Kalish & Lyons, Hato Rey, P. R., for plaintiff.

McConnell, Valdés, Sifre, Griggs & Ruíz-Suria, San Juan, P. R., for defendant.

OPINION AND ORDER

TORRUELLA, District Judge.

Plaintiff has brought this action alleging the illegal termination by the Defendant Brother International Corporation (Brother International) of a contract of distribution. Jurisdiction is invoked pursuant to the provisions of 28 U.S.C. § 1332.

The Defendant has filed a Motion for Summary Judgment contending that Plaintiff is not a "dealer" within the meaning of Act 75 of June 24, 1964 as amended, 10 L.P.R.A. 278 et seq. (hereinafter referred to as the Dealer's Act). An Affidavit by Jerome A. Rothman, Senior Vice President of the Defendant Corporation, and a Sworn Statement by the Plaintiff have been submitted in support of the parties' contentions.

10 L.P.R.A. 278(a), (b) defines the terms "dealers" and "dealer's contract" as:

"(a) 'Dealer'—person actually interested in a dealer's contract *because of his having effectively in his charge in Puerto Rico* the distribution, agency,

concession or representation of a given merchandise or service;

"(b) *'Dealer's Contract'*—relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationships, the former *actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.*" (Emphasis supplied).

From the documents submitted by the parties it appears that since February, 1967, Brother International operates office and warehouse facilities in Puerto Rico. A general manager, a sales manager, several salesmen and office, warehouse and delivery personnel constitute Defendant's salaried work force in Puerto Rico. Brother International imports and warehouses merchandise in sufficient volume to satisfy the demands of the Puerto Rican market, mainly distributing and selling its products through company salesmen whose income is received on a commission basis. The Defendant Corporation also utilizes the services of sales representatives who either are assigned particular territories or act in the capacity of account representatives. However, Brother extends credit to the customers or accounts, services the merchandise sold and engages in local as well as institutional advertising.

From August, 1974 to March, 1977, Plaintiff herein was one of the five or six sales representatives employed by Brother. He had no territory assigned, but was exclusively responsible of attending to the sales and service of six or seven accounts which represented annual sales not exceeding seven per cent (7%) of Defendant's yearly sales volume in Puerto Rico.[1] As a sales representative, Plaintiff received commissions for his sales and would directly report on his work and problems to the general manager and/or sales manager of Brother.

The sole issue before us is whether the contractual relationship between the parties hereto falls within the ambit of the Dealer's Act.[2] We think it does not.

Even under an extremely liberal interpretation of the Dealer's Act, we cannot say that the activities and acts of authority of the Plaintiff were those of a distributor. Considering the facts in the manner most favorable to Plaintiff, it can only be concluded that he was not "actually and effectively" in charge of the distribution of Defendant's products in the market of Puerto Rico. Plaintiff had no obligation to purchase inventories; he had no warehouse facilities; he employed no salesmen nor had any of the inherent responsibilities of a distributor.[3] 10 L.P.R.A. 278; cf. *Warner Lambert v. Tribunal Superior,* 101 D.P.R. 378 (1973).

Although the Supreme Court of Puerto Rico has not expressly ruled on the precise question presented herein, we think that the unequivocal terms of the Act, the legislative motives behind its approval and the cases interpreting it preclude us from granting Plaintiff's request. Undoubtedly, to extend the severe provisions of the Act to every commissioned salesman in Puerto Rico would go far beyond our province.

---

1. The documents on file disclose that the accounts assigned to the Plaintiff while his "agreement" with B.I.C. lasted were: *P.R.N.G.,* representing annual sales of about $10,000–$15,000; *The Post Exchange,* $40,000; *B. F. Goodrich,* $25,000 (one single sale); *Goodyear,* $20,000 annually; *Mueblerías Mendoza,* $17,000 (one single sale in 1975). In 1976, Brother's sales volume in Puerto Rico exceeded $1,200,000.

2. "Subsection (a): The 1966 Act amended definition of dealer so as to include not only the person so designated but also any person actually interested in a dealer's contract *who acts as such.*

"Subsection (b): The 1966 Act included in definition of dealer's contract any contract whereby one of the parties *actually* acts as such 'irrespectively of the manner in which the parties may call' ". 10 L.P.R.A. 278, n. (emphasis supplied)

3. All that transpires from this case is that the Defendant itself was in charge of the distribution of the products. (See Affidavit by Jerome A. Rothman, filed on October 4, 1977).

See *Warner Lambert v. Tribunal Superior,* supra, at 398–401.

Moreover, in the case of *Frank Munarriz v. Captain Sylvain Ledee, Inc.,*[4] the Superior Court of Puerto Rico, San Juan Part was faced with this issue in circumstances resemblant to those present in this case. The Plaintiff in *Munarriz* had his own office from which he represented manufacturing firms, obtained purchase orders from the contractors and submitted them to the Defendant for approval. The merchandise was delivered directly to the purchaser by the manufacturer. The Plaintiff received a 10% commission on each sale made.[5]

The Superior Court characterized the role of Plaintiff as that of commissioned salesman and not of representative or distributor. It was thus concluded that Munarriz was not entitled to the protection afforded by the Act. (Conclusion of Law No. 1).

Undoubtedly, the decision in *Munarriz* lends further support to our present conclusion,[6] in the absence of any persuasive data that the Supreme Court of Puerto Rico would decide otherwise.[7] *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Six Companies of California v. Joint Highway District,* 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940).

Plaintiff having failed to raise any genuine issue of material fact, R. 56, Fed.R. Civ.P.; *Hahn v. Sargent,* 523 F.2d 461 (1st Cir., 1975), cert. denied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), Defendant's Motion for Summary Judgment is granted and this case is hereby DISMISSED.

The Clerk of the Court shall enter Judgment accordingly.

IT IS SO ORDERED.

**4.** Civ. 67–5799(904), September 14, 1977; appeal dismissed by the Supreme Court of Puerto Rico, December 20, 1977.

**5.** Unlike here, the major portion of the sales made in Puerto Rico by the Defendant in *Munarriz* was due to the efforts of Plaintiff. (Determination of Fact No. 8)

**6.** Although Plaintiff has stated that the Superior Court's decision is dissimilar from the facts presented in this case, no attempts have been made to substantiate that statement, and we fail to see any valid grounds for distinction.

**7.** An appeal was dismissed by the Supreme Court for failure to present any substantial constitutional question, supra, n. 4.