ROBERCO, INC. y ROBERTO COLÓN, demandantes y recurrentes, *v.* OXFORD INDUSTRIES, INC., demandado y recurrido.

*Número:* RE-85-300     *Resuelto:* 30 de junio de 1988

116

118

*Nelson Biaggi García* y *María Soledad Piñeiro Soler*, de *Ramírez, Látimer & Biaggi*, abogados de los recurrentes; *Jorge Calero Blanco*, de *Ledesma, Palou & Miranda*, abogado del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Se plantea ante nos la interrogante de lo que es un "distribuidor" para propósitos de la Ley sobre Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq.*

## I

*Hechos*

El Sr. Roberto Colón presentó ante el Tribunal Superior, Sala de San Juan, una demanda al amparo de la Ley Núm. 75, *supra*, contra Oxford Industries, Inc. (en adelante Oxford). Alegó que tenía un contrato con la demandada para la distribución y representación de los productos que éste vendía en Puerto Rico y que la parte demandada lo dio por terminado, sin justa causa, causándole daños.[1]

La demandada presentó una moción de sentencia sumaria en la que alegó que no existía controversia de hechos y que, como cuestión de derecho, el demandante no era un "distribuidor" protegido por la Ley Núm. 75, *supra*.[2] La parte demandante se opuso.[3] Luego de celebrar vista, el tribunal, fundándose en una deposición del Sr. Roberto Colón, formuló las determinaciones de hecho siguientes:

1. No hay contrato escrito alguno suscrito por las partes. Sin embargo, se ha establecido que el demandante se encar-

---

[1] Posteriormente, enmendó la demanda para alegar que la distribución de los productos de la demandada la hacía a través de una corporación llamada Roberco, Inc.

[2] Con la moción de sentencia sumaria acompañó una deposición del demandante Roberto Colón.

[3] La parte demandante objetó el uso de la deposición por alegadamente no habérsele brindado oportunidad de objetar a las preguntas y a las contestaciones. En la toma de deposición se pactó que no se entenderían renunciadas las objeciones a las preguntas por el hecho de que no se levantaran en el momento. Sin embargo, en la moción en oposición a la sentencia sumaria la parte demandante no levantó objeciones a las preguntas de la deposición. El tribunal de instancia declaró sin lugar la objeción al uso de la deposición como fundamento para la moción de sentencia sumaria.

gaba de la venta en Puerto Rico de una línea de camisas para hombres y niños conocida como "Lightning Bolt", cuya licencia tenía la parte demandada.

2. La demandante conseguía las órdenes en Puerto Rico y se las enviaba a la demandada a los Estados Unidos a base de una comisión.

3. La demandante no compraba los productos de la demandada para luego revenderlos a sus clientes, por lo tanto no mantenía un inventario en Puerto Rico ni almacenaba aquí los productos.

4. La demandante no tenía discreción en cuanto a la concesión de crédito a sus clientes, ya que dicha decisión era tomada, sin su intervención, por la demandada.

5. Tampoco era una responsabilidad de la demandante el cobrar los productos que vendía, ya que los clientes pagaban directamente a la demandada en los Estados Unidos. Sólo en circunstancias especiales era que la demandante recibía pagos de algunos de los clientes.

6. Las comisiones recibidas por la demandante eran exclusivamente a base de las ventas, sin importar que las órdenes fueran o no cobradas posteriormente.

7. Tampoco la demandante se responsabilizaba por la entrega de la mercancía, ya que de eso se encargaba Oxford directamente.

8. La demandante no tenía responsabilidad alguna por las posibles devoluciones de mercancía, las cuales también eran responsabilidad exclusiva de la demandada.

9. La demandante nunca hizo uso del plan de publicidad cooperativa que tenía la demandada y su inversión en publicidad para los productos "Lightning Bolt" fue mínima, limitándose a algunos anuncios aparecidos en revistas preparadas para "trade shows" y similares. Los pocos anuncios publicados eran realmente para beneficio de Roberco, Inc., ya que el nombre "Lightning Bolt" aparecía junto al de los otros productos que también distribuía la demandante.

10. La demandada dio por terminada la relación entre las partes durante el período de tiempo comprendido entre los meses de marzo a mayo de 1982. Sentencia, págs. 2–3.

El tribunal concluyó, como cuestión de derecho, que el demandante no era un "distribuidor" según lo define la Ley

Núm. 75, *supra*, en su Art. 1 (10 L.P.R.A. sec. 278). Determinó que más bien era un representante de ventas a comisión sin que hubiese asumido las obligaciones que distinguen a un "distribuidor", según ese término se define en la Ley Núm. 75, *supra*, y la jurisprudencia interpretativa de la misma, tanto estatal como federal. Procedió, entonces, a declarar con lugar la moción de sentencia sumaria de la demandada y desestimar la demanda. No conforme, la parte demandante acudió ante nos en revisión; expedimos el auto y, al haber comparecido las partes, procedemos a resolver.

## II

*El distribuidor bajo la Ley Núm. 75 y la jurisprudencia del Tribunal Supremo del Estado Libre Asociado de Puerto Rico*

■ La Ley Núm. 75, *supra*, fue creada con el propósito de evitar los perjuicios surgidos como consecuencia de la práctica seguida por algunos fabricantes de eliminar arbitrariamente a los distribuidores locales tan pronto éstos creaban en Puerto Rico un mercado favorable para los productos y servicios del primero. *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973); *San Juan Merc. v. Canadian Transport Co.*, 108 D.P.R. 211 (1978). A esos efectos, la Exposición de Motivos de la Ley Núm. 75, *supra*, expresa que:

> El Estado Libre Asociado de Puerto Rico no puede permanecer indiferente al creciente número de casos en que empresas domésticas y del exterior, sin causa justificada, eliminan sus distribuidores, concesionarios, o agentes, tan pronto como éstos han creado un mercado favorable y sin tener en cuenta sus intereses legítimos.
>
> La Asamblea Legislativa de Puerto Rico declara que la razonable estabilidad en las relaciones de distribución en Puerto Rico es vital a la economía general del país, al interés público y al bienestar general, y en el ejercicio del poder policial, con-

sidera necesario reglamentar, en lo pertinente, el campo de dichas relaciones, para evitar los abusos que ciertas prácticas ocasionan. 1964 Leyes de Puerto Rico 243–244.

A los mismos efectos se sometió un informe de la Comisión de Industria y Comercio que recomienda aprobar la medida como medio de atacar el problema de la terminación, sin justa causa, de un contrato de distribución en perjuicio del distribuidor local que "ha creado un mercado favorable para sus productos . . . [y] eficientemente han cumplido con sus responsabilidades". 18 Diario de Sesiones de la Asamblea Legislativa, Parte III, pág. 1531 (1964).

El elemento central de la Ley Núm. 75, *supra*, es el distribuidor y el contrato de distribución. El Art. 1 (10 L.P.R.A. sec. 278(a) y (b)) define "distribuidor" y "contrato de distribución" de la manera siguiente:

> (a) Distribuidor: persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio.
>
> (b) Contrato de distribución: relación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico.

■ Bajo el esquema de la Ley Núm. 75, *supra*, solamente se regula la terminación de los contratos de distribución y las consecuencias que ello acarrea; nada más dice sobre la formación y características de éstos. A. Estrella, *El contrato de agencia o representación comercial: naturaleza de la relación—la terminación del contrato*, 31 (Núm. 2) Rev. C. Abo. P.R. 241 (1970). La Ley Núm. 75, *supra*, define el concepto "distribuidor" de forma amplia y poco precisa, lo

que ha obligado a los tribunales a "delimitar su contenido a la luz de los fines que persigue el estatuto". *San Juan Merc. v. Canadian Transport Co.*, supra, pág. 215; *J. Soler Motors v. Kaiser Jeep Int'l*, 108 D.P.R. 134 (1978); P. Salamone, *Puerto Rico's Distributor's Law: Law 75: A Primer*, 18 (Núm. 1) Rev. Jur. U.I.A. 75 (1983).

▪ Al analizar los contratos de distribución y de agencia, los comentaristas y tratadistas han encontrado que estas figuras tienen en común ciertas características: ambas son contratos entre empresarios mercantiles independientes, de continuidad o duración fija o indeterminada. Mediante los mismos se impone al distribuidor o agente obligaciones de amplia y extensa actividad de promoción y venta. J. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Revista de Derecho Mercantil, 1963, T. III, Vol. 1, págs. 536–542; R. Uría, *Derecho Mercantil*, 11ma ed., Madrid, Ed. Aguirre, 1976, págs. 543–544. La gestión principal de éstos es crear un mercado favorable y conquistar clientela para un producto o servicio. Entre otras, la publicidad, la coordinación y desarrollo del mercado, las entregas de mercancías, los cobros, el mantenimiento de inventario y "principalmente la promoción y conclusión de contratos de ventas" son, en términos generales, algunas de las obligaciones que pueden estar presentes entre las gestiones que realiza un distribuidor. *San Juan Merc. v. Canadian Transport Co.*, supra, pág. 215; Garrigues, *Tratado de Derecho Mercantil, op. cit.*; Estrella, *op. cit.* Son precisamente el tiempo, el dinero, las energías y las facilidades que ha invertido el "distribuidor" los fundamentos para la indemnización que al amparo del estatuto se concede cuando el principal da por terminado el contrato sin justa causa, causándole con ello daños al "distribuidor". *San Juan Merc. v. Canadian Transport Co.*, supra.

▪ La relación del "distribuidor" con el suplidor "se caracteriza por su continuidad, estabilidad, confianza mutua,

124

coordinación entre ambas partes en calidad de empresarios independientes, sin subordinación jerárquica" y, usualmente, acarrea una inversión de parte del distribuidor. *J. Soler Motors v. Kaiser Jeep Int'l*, supra, pág. 142.

Desde que la Ley Núm. 75, *supra*, fue aprobada y puesta en vigor, sólo en tres (3) ocasiones hemos tenido oportunidad de estudiar algunos aspectos de la figura del "distribuidor". En *J. Soler Motors v. Kaiser Jeep Int'l*, supra, resolvimos que la exclusividad en la distribución de un producto o prestación de un servicio no era un requisito indispensable para cualificar como un "distribuidor" bajo la Ley Núm. 75, *supra*. Tampoco lo era el que la referida actividad cubriera todo el territorio de Puerto Rico. También dijimos que "[e]n la transferencia de un producto del fabricante al consumidor generalmente intervienen en sus distintos niveles varios intermediarios que forman la cadena de distribución. Estos intermediarios pueden clasificarse en distintas formas, comerciantes mayoristas, agentes distribuidores, detallistas, concesionarios por franquicias, representantes de fábrica, etc. El proceso de distribución los incluye a todos, tanto al primer intermediario que es el distribuidor general como al último que transfiere el producto al consumidor, el detallista. La cadena de distribución puede también estar dividida en zonas o regiones y en cada uno de sus niveles puede estar integrada por uno o más intermediarios". *J. Soler Motors v. Kaiser Jeep Int'l*, supra, pág. 139.

En *San Juan Merc. v. Canadian Transport Co.*, supra, expresamos que por ser esquemática la definición de "distribuidor" y de "contrato de distribución" contenida en la Ley Núm. 75, *supra*, era "necesario delimitar su contenido a la luz de los fines que persigue el estatuto". *Íd.*, pág. 215. Sobre la figura del "distribuidor", específicamente indicamos que "[l]a publicidad, la coordinación del mercado, las en-

tregas de mercancía, los cobros, el mantenimiento de inventario y principalmente la promoción y conclusión de contratos de ventas son en términos generales obligaciones del distribuidor". Íd. En *Córdova & Simonpietri v. Crown American*, 112 D.P.R. 797 (1982), extendimos la protección de la Ley Núm. 75, *supra*, a los agentes de seguros. Afirmamos que "los distribuidores protegidos por la Ley Núm. 75 no sólo son los que distribuyen mercancías, sino también los que prestan un servicio al principal. . . . [Por lo tanto] la actividad mercantil del agente de seguros, en tanto en cuanto promueve y concluye contratos de seguro, constituye la prestación de un servicio mediante concesión o franquicia en el mercado de Puerto Rico bajo la Ley [sobre] Contratos de Distribución, *supra*". Íd., págs. 802–803.

## III

*El distribuidor bajo la Ley Núm. 75 y la jurisprudencia de los tribunales federales*

Las cortes federales han tenido una mayor oportunidad de considerar casos al amparo de la Ley Núm. 75, *supra*.[4] En *Cruz Ramos v. Brother Intern. Corp.*, 445 F. Supp. 983 (D. Puerto Rico 1978),[5] los hechos eran muy similares al caso de autos. El demandante simplemente recibía una comisión por las ventas que realizaba. No llevaba inventario ni tenía empleados o facilidades de almacén. Tampoco tomaba decisiones en cuanto a la concesión de crédito, no entregaba la mercancía vendida ni hacía la promoción. Ante este cuadro

---

[4] Esto se debe, probablemente, a que en los pleitos bajo la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq.*, casi siempre está presente la diversidad de ciudadanía como fundamento jurisdiccional para que el tribunal federal pueda considerar el caso.

[5] Este caso fue resuelto antes que *San Juan Merc. v. Canadian Transport Co.*, 108 D.P.R. 211 (1978), y que *J. Soler Motors v. Kaiser Jeep Int'l*, 108 D.P.R. 134 (1978), pero la decisión de éstos no contradice lo allí resuelto.

de hechos, el Tribunal de Distrito Federal para el Distrito de Puerto Rico resolvió que no estaba *real y efectivamente* a cargo de la distribución del producto del demandado y que, por lo tanto, no cualificaba como "distribuidor" para los fines de la protección que ofrece la Ley Núm. 75, *supra.*[6]

En *Mario R. Franceschini, Inc. v. Riley Co.*, 591 F. Supp. 414 (D. Puerto Rico 1984), también se trataba de hechos muy similares. Allí el demandante sólo gestionaba órdenes de compra que luego enviaba al demandado. Había creado un pequeño mercado para el producto del demandado en Puerto Rico. Sin embargo, no tenía autoridad para fijar los precios, extender o denegar crédito a los clientes; tampoco podía determinar los términos de los contratos ni se encargaba de concluir los mismos. A la luz de estos hechos, el tribunal concluyó que la controversia giraba alrededor de la determinación de si la creación de un mercado, aunque pequeño, sin que estuvieran presentes otros elementos relacionados con la figura de un "distribuidor", era suficiente para concederle al demandante el *status* de "distribuidor" al amparo de la Ley Núm. 75, *supra.* Resolvió que, para poder cualificar como "distribuidor" bajo esta ley, era necesario que estuviera presente una serie de factores y que "lo importante era determinar si todas las actividades que se realizan, ya fueren almacenaje, entrega o promoción, suman al desarrollo de un mercado a través de promoción y cierre de contratos de venta". (Traducción nuestra.) *Mario R. Franceschini, Inc. v. Riley Co.*, supra, pág. 418. Consideró que nin-

---

[6] "Even under an extremely liberal interpretation of the Dealer's Act, we cannot say that the activities and acts of authority of the Plaintiff were those of a distributor. Considering the facts in the manner most favorable to Plaintiff, it can only be concluded that he was not 'actually and effectively' in charge of the distribution of Defendant's products in the market of Puerto Rico. Plaintiff had no obligation to purchase inventories; he had no warehouse facilities, he employed no salesmen nor had any of the inherent responsibilities of a distributor." (Escolio omitido.) *Cruz Ramos v. Brother Intern. Corp.*, 445 F. Supp. 983, 984 (D. Puerto Rico 1978).

guno de los factores era determinante por sí solo, sino que se debía ponderar si la existencia de todos o alguno de ellos resultaba en la creación de un mercado, principalmente a través de la promoción y conclusión de contratos de ventas. Tomando en consideración lo anterior y las decisiones de este Tribunal, expresó:

> Thus the soundest approach in examining these terms is to abide as closely as possible to the formula provided by the Supreme Court of Puerto Rico, any analysis of the actual contents of a given commercial relationship must take the basic elements of this formula into account. In the present case, plaintiff has not disputed its lack of authority to approve or reject the orders it dispatched to defendant. It has not controverted the proposed facts that its word was not binding on defendant, that it did not buy any of the equipment sold and that it did not have a say in fixing terms of sales, eventual billing and accounting. It assumed neither the risks nor the responsibilities that go with an Act 75 dealership. It has been shown that plaintiff was a mere forwarder of orders who did not have the authority to close or conclude the sales contracts it promoted. In sum, plaintiff was not a dealer within the definition of the Act and the case law construing it. *Mario R. Franceschini, Inc. v. Riley Co.*, supra, pág. 420.

Posteriormente, en la jurisdicción federal se han resuelto los casos de *Sudouest Import Sales Corp. v. Union Carbide Corp.*, 732 F.2d 14 (1er Cir. 1984); *González v. Brown Group, Inc.*, 628 F. Supp. 436 (D. Puerto Rico 1985), y *EBI, Inc. v. Gator Industries, Inc.*, 807 F.2d 1 (1er Cir. 1986), todos con hechos similares. En todos se ha resuelto que, para propósitos de la Ley Núm. 75, *supra*, una persona que no asuma responsabilidades al gestionar las ventas y no invierta en promoción o inventario no está *real y efectivamente* a cargo de la distribución del producto en Puerto Rico y, por lo tanto, no cualifica como "distribuidor". En todo caso, se le podrá considerar como un representante de ventas a comisión, pero no un "distribuidor".

## IV

### *Los auxiliares o intermediarios del comercio*

En *Pacheco v. Nat'l Western Life Ins. Co.*, 122 D.P.R. 55 (1988), también resuelto hoy, expresamos que la materia regulada por la Ley Núm. 75, *supra*, es de naturaleza mercantil, y que para suplir las lagunas de dicha ley acudiríamos en primer término al Código de Comercio.

En el derecho mercantil existe una figura que es esencial para el desarrollo del tráfico comercial y, por ende, para el comerciante; ésta es la del auxiliar del comerciante. Esta figura se ha definido como que comprende a "[t]oda persona que, en virtud de un contrato, queda obligada a realizar una prestación o periódicas prestaciones en favor de un comerciante, viene por este hecho a auxiliarle en su comercio . . . . Pero estas personas no se proponen exclusivamente ser auxiliares de un comerciante; antes bien, son ellas por sí comerciantes substantivos, cuyo género de comercio no se opone, sino que se coordina o subordina, al de otros comerciantes. Más que auxiliares del comerciante son auxiliares del comercio". J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed., Madrid, Ed. Aguirre, 1976, T. I, pág. 658. Son colaboradores autónomos del empresario mercantil que no están integrados a su establecimiento, pero le auxilian a cambio de una remuneración convenida. Se puede decir que los auxiliares del comercio son empresarios cuya actividad consiste en prestar servicios retribuidos a otros empresarios. Uría, *op. cit.*, pág. 45.

Entre los auxiliares o intermediarios del comercio se encuentran los viajantes. Éstos auxilian al empresario de forma estable y continuada, y su actividad comercial se desplega fuera del establecimiento del empresario. La labor de éstos consiste en *"ensanchar constantemente el círculo de operaciones de la empresa, conservando, renovando y*

*aumentando en lo posible la clientela*". (Énfasis suplido.) Uría, *op. cit.*, pág. 52. Garrigues nos describe este intermediario o auxiliar del comercio de la manera siguiente:

> Dentro de los apoderados singulares podemos agrupar a los viajantes. El viajante puede ser: agente independiente, que presta sus servicios a diversos comerciantes mediante remuneración fija; viajante comisionista, que percibe una comisión sobre importe de las ventas que realice, y viajante dependiente, miembro del personal del comerciante. Este es el que ahora nos interesa. Viajante es toda persona auxiliar que opera fuera del establecimiento del negocio. Su misión consiste en ampliar el círculo de venta del principal, bien sea dentro de la misma población (viajante en plaza), bien sea en distintas poblaciones. El viajante extiende la clientela del comerciante, dando a conocer al público distante del establecimiento las mercancías (mediante muestras generalmente) o los servicios que en él se obtienen. De la habilidad y competencia del viajante depende muchas veces la prosperidad del negocio. Es cargo de confianza, dado que el viajante no actúa bajo la inmediata vigilancia del principal. *Las facultades del viajante se gradúan diversamente en la práctica: unas veces su poder se extiende a la conclusión del contrato de venta (con autorización o no para percibir el precio); otras veces sólo está autorizado para transmitir ofertas de contrato al principal; otras, finalmente, puede pactar, pero subordinando el contrato a la aprobación del principal.* Todas estas hipótesis entran en los supuestos del artículo 292, ya que al viajante se le encomienda o alguna gestión (recoger ofertas de contrato: pedidos) o la representación del comerciante en un ramo determinado de contratos. (Énfasis suplido.) Garrigues, *Curso de Derecho Mercantil, op. cit.*, págs. 673–674.

El viajante es la figura de la cual surge otro auxiliar o intermediario del comercio: el agente. Por eso se ha dicho que "los agentes dedicados a la venta de mercancías tienen su antecedente inmediato en la figura del viajante dependiente de su principal". (Escolio omitido.) Estrella, *op. cit.*, págs. 242–243. En ocasiones se hace difícil diferenciar entre el viajante independiente y el agente, puesto que

ambos tienen la misma condición de trabajadores frente al empresario. A ambos se les exige y en ambos tienen que concurrir dos (2) condiciones, a saber: que para el perfeccionamiento de las operaciones llevadas a cabo tengan la aprobación del empresario y que no queden personalmente obligados a responder del buen fin de la operación que lleven a cabo. Garrigues, *Curso de Derecho Mercantil, op. cit.* También ambos gozan de autonomía para el desempeño de su función mediadora. "Principal y distribuidor se hallan en relación de colaboración en la distribución y venta de un producto. No están vinculados por ningún pacto ni relación de dependencia que subordine una empresa a la otra." *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172, 187 (1988), también resuelto hoy.

Bajo el esquema de la Ley Núm. 75, *supra*, el viajante propiamente no goza de la protección de la ley. Éste es un "trabajador" del empresario individual que no lleva a cabo una cantidad sustancial de las gestiones que realiza el "distribuidor" ni incurre en los gastos e inversiones que normalmente acarrea la distribución de un producto o servicio. No es un "distribuidor", aunque en ciertas ocasiones, por razón de las actividades que realiza, podría parecerlo.

En *Pacheco v. Nat'l Western Life Ins. Co.*, supra, págs. 59–60, al referirnos al contrato de distribución de la Ley Núm. 75, *supra*, citando a Latour Brotons, dijimos que "[e]l contrato de distribución es 'una modalidad contractual nueva, atípica . . . . [S]e trata de un contrato de naturaleza mercantil, rigiéndose, por consiguiente, por las normas [del] Código [de Comercio], por los usos de comercio observados generalmente en cada plaza —muy importante a los efectos que ahora interesan, por ser contrato gestado en la práctica comercial— y, finalmente, por las reglas del Derecho común'".

██ La cadena de distribución, desde el fabricante hasta que el producto llega a manos del consumidor, puede estar integrada por un sinnúmero de auxiliares o intermediarios del comercio. Resulta obvio que no todos cualifican para la protección que brinda la Ley Núm. 75, *supra*. Para que se considere al auxiliar o intermediario del comercio como "distribuidor" no basta un mero contacto con el producto en el camino de éste pasar del fabricante o suplidor al consumidor; hace falta algo más.

██ Un "distribuidor" es un empresario mercantil independiente[7] que ha establecido una relación de continuidad y duración, fija o indeterminada, con otro empresario principal para la distribución de un producto o servicio. Esta relación se caracteriza por la cooperación, la estabilidad y la confianza mutua que genera. Su finalidad es la creación, el desarrollo y la coordinación del mercado, y la obtención de nueva clientela. Para determinar si se está ante la figura de un "distribuidor" deben tomarse en consideración varios factores, entre ellos: si el "distribuidor" realiza una activa promoción y/o conclusión de contratos; si adquiere inventario; si ejerce control sobre los precios; si tiene discreción en cuanto a pactar los términos de las ventas; si tiene responsabilidad por la entrega y cobro de la mercancía, y autoridad para conceder crédito; si lleva a cabo gestiones, independientes o conjuntas, de publicidad; si ha asumido el riesgo y responsabilidad en la gestión que realiza; si compra el producto, y si

---

[7] Luego de considerar factores tales como el grado de control, las oportunidades de pérdidas, la permanencia de la relación, las destrezas requeridas en el servicio prestado, el sitio donde éste se presta, la inversión requerida y si se obtenía plusvalía o no en relación con vendedores a comisión hemos resuelto que, a los fines de la Ley de Seguridad de Empleo de Puerto Rico, Ley Núm. 74 de 21 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 702(k)(5)(A), (B) y (C), el servicio prestado constituía un empleo. *Avon Products, Inc. v. Srio. del Trabajo*, 105 D.P.R. 803 (1977); *Tastee Freez v. Negdo. Seg. Empleo*, 108 D.P.R. 495 (1979); *Tastee Freez v. Negdo. Seg. Empleo*, 111 D.P.R. 809 (1981).

tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. A éstos pueden añadírsele otros sin que se entienda ni pretenda hacer un listado exhaustivo.

Ningún criterio es determinante por sí solo y ninguno tiene mayor peso o importancia que otro. Se deben examinar y ponderar la conjunción de factores existentes en cada caso para a su luz resolver si estamos ante la figura del "distribuidor" protegido por la Ley Núm. 75, *supra*. Tomando en consideración los hechos específicos del caso de autos, analicemos esta cuestión.

## V

*Conclusión*

En el caso de autos, el demandante señor Colón no mantenía inventario ni facilidades de almacén, no compraba el producto ni tenía la responsabilidad de cobrar y entregar la mercancía, no realizaba gestiones de publicidad significativas, no tenía control de los precios ni discreción para pactar los términos de las ventas y conceder crédito, no asumía el riesgo o responsabilidad por la venta y tampoco concluía los contratos de venta. El señor Colón sólo se ocupaba, a base de una comisión, de gestionar algunas órdenes de compra; ese era básicamente el principio y fin de su contacto con los clientes y con el demandado. Éste nunca asumió las responsabilidades y los riesgos relacionados con la figura de un "distribuidor". Bajo estas circunstancias no podemos considerar que *real y efectivamente* tenía a su cargo "la distribución . . . o representación de determinada mercancía o servicio" en Puerto Rico. 10 L.P.R.A. sec. 278(a). El señor Colón no era un "distribuidor" según la Ley Núm. 75, *supra*.

La intención de la Ley de Contratos de Distribución fue proveer una compensación, por la terminación arbitraria sin justa causa de un contrato de distribución, para

aquellos comerciantes que *real y efectivamente* tuvieran a su cargo la distribución y representación de un producto en la isla, salvaguardando, sin embargo, la flexibilidad necesaria para que la empresa mercantil suplidora pudiera organizar y reorganizar su sistema de distribución de forma eficiente y económica. Nuestro sistema de libre competencia así lo exige.[8] Resulta obvio, pues, que no se intentó abarcar a todos los intermediarios o auxiliares del comercio.

En el caso de autos, la relación establecida entre el demandante y demandado fue de vendedor a comisión y/o la de un viajante comisionista independiente que auxilia a un empresario principal en el desarrollo de su actividad comercial, sin obligarse ni responsabilizarse personalmente; no la de "representante o distribuidor" protegido por la Ley Núm. 75, *supra.*

Por los fundamentos expuestos, *se dictará sentencia que confirme la del tribunal de instancia.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.

---

[8] Es interesante observar que nuestra legislación protectora del sistema de libre competencia, la Ley Antimonopolística, Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. sec. 257 *et seq.*), fue aprobada sólo un día después de la Ley Núm. 75, *supra*, el 25 de junio de 1964.