**RICARDO CRUZ DISTRIBUTORS, INC., Plaintiff,**

v.

**PACE SETTER, INC., and/or Pace Setter Marketing, Inc., and/or Pace Setter Exhaust Products, Defendants.**

**Civil No. 94–1080 (JAF).**

United States District Court, D. Puerto Rico.

June 12, 1996.

---

Edna Hernandez, Rafael Escalera–Rodriguez, Reichard & Escalera, San Juan, PR, for Plaintiff.

Salvador Antonetti, Heriberto J. Burgos–Perez, Fiddler Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

### I.

### Introduction

Plaintiff, Ricardo Cruz Distributors (Cruz), brought this action pursuant to the Puerto Rico Dealer's Act, 10 L.P.R.A. § 278–278d (1976 & Supp.1995) (Law 75), against codefendants PaceSetter, Inc. (PaceSetter), PaceSetter Marketing, Inc. (PaceSetter Marketing), and PaceSetter Exhaust Products.[1] Plaintiff claims that it had an exclusive distributorship agreement with codefendant PaceSetter, and that codefendant PaceSetter Marketing has breached this agreement by refusing to sell products at the prices stated in the agreement and by selling products to other distributors. Defendant PaceSetter Marketing has filed a motion for summary judgment, claiming that Cruz had a distribution agreement with a different corporation, PaceSetter, an entity that was liquidated and no longer exists. Plaintiff filed an opposition to defendant's request for summary judgment. This opposition was followed by defendant's reply and plaintiff's surreply. Having examined the parties' respective contentions, we find no genuine controversies of material fact and **GRANT** summary judgment for movant.

### II.

### Standard for Summary Judgment

■ A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881,

894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■ The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.*

■ Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of *some* alleged factual dispute between the parties;" the requirement is that there be a *genuine* issue of *material* fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Likewise, a nonmovant will not normally defeat the motion by discrediting testimony presented by movant. *Id.* at 256–57, 106 S.Ct. at 2514–15. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

### III.

### Facts

We have before us the tale of two companies, PaceSetter and PaceSetter Marketing. PaceSetter was incorporated in 1973, under

---

1. PaceSetter Exhaust Products is not a separate company; PaceSetter Marketing's sales manager, Fred Gurla, used the name PaceSetter Exhaust Products instead of PaceSetter Marketing at a trade show in order for customers to know what type of product the company sold. *Docket Document No. 26, Attachment.*

the law of California. *Docket Document No. 19, Exhibit A; Docket Document No. 26, Attachment.* Its principal place of business was in California. *Docket Document No. 19, Exhibit A; Docket Document No. 26, Attachment.* The company's president and sole stockholder was Mr. Elwood E. Harrah. *Docket Document No. 19, Exhibit A.* Pace-Setter manufactured automotive exhaust and suspension parts in its 220,000 square-foot factory in Los Angeles, California. *Docket Document No. 26, Attachment.* By 1987, the company had made over $7 Million in sales and had employed 140 persons. *Id.*

Two years later, hard times befell the company when it lost its million-and-a-half customer Grand Exhaust. *Docket Document No. 26, Attachment.* From August 1, 1990, to January 31, 1993, the company sustained losses totaling $1,300,000. *Docket Document No. 19, Exhibit A.* Cruz was aware of the financial problems that PaceSetter was confronting. *See Docket Document No. 12, Exhibit Nos. 8 & 10.* Owing to these losses, the company closed down and was liquidated, and the proceeds were distributed to its secured creditors by the beginning of 1993. *Docket Document No. 19, Exhibit A; Docket Document No. 26, Attachment.* As part of the liquidation, PaceSetter sold its machinery to different companies based in China, Los Angeles, California, and Mexico. *Docket Document No. 26, Attachment.* A year after PaceSetter's liquidation, in a letter dated February 14, 1994, Mr. Harrah informed Cruz' counsel of PaceSetter's liquidation. *Docket Document No. 19, Exhibit B.*

Cruz alleges that PaceSetter never informed Cruz of the company's liquidation. Instead, Mr. Harrah allegedly told Cruz that PaceSetter was moving its offices to Arizona in order to cut costs. *Docket Document No. 22, Exhibit 1.* In addition, Cruz claims that business between them continued as usual after April 1993, and that the two companies were acting as one. *Id.* As proof, plaintiff submitted copies of documents relating to one purchase order made to PaceSetter Marketing that was allegedly filled pursuant to the terms and conditions of the exclusive distribution agreement with PaceSetter. *Id., Exhibits 2, 3, 4, 5, 6 & 10.* However, plaintiff alleges that PaceSetter Marketing constructively terminated the distributor agreement on July 16, 1993, when it informed Cruz that PaceSetter Marketing had to increase the price of products ordered by Cruz. *Id., Exhibits 1 & 8.*

On or about the time of PaceSetter's liquidation, PaceSetter Marketing was incorporated under the laws of the state of Arizona, where it has its principal place of business. *Docket Document No. 19, Exhibit A.* PaceSetter Marketing is housed in a 1,500 square-foot building, and it employs only six people, including Mr. Harrah. *Docket Document No. 26, Attachment.* PaceSetter Marketing imports, markets, and sells mufflers and other exhaust system components. *Docket Document No. 26, Attachment.* Unlike PaceSetter, PaceSetter Marketing does not manufacture the products it sells. Instead, PaceSetter Marketing purchases products from its Mexican owner, Iddea.[2] *Id.*

In spite of the similarity in names,[3] the companies are two separate and independent entities. PaceSetter Marketing neither purchased any of PaceSetter's assets, nor did it assume any PaceSetter liabilities. *Docket Document No. 19, Exhibit A.* The only common link between the two companies is Mr. Harrah,[4] who has served as president and manager for both companies. *Docket Document No. 19, Exhibit A.* However, it appears that Mr. Karl Willard, a former Sales Manager of PaceSetter, also worked for

---

**2.** Prior to November 1992, Iddea had bought benders and exhaust system machinery from PaceSetter. *Docket Document No. 26, Attachment.* Mr. Harrah has the sale receipts for this transaction. *Id.*

**3.** PaceSetter did not sell to PaceSetter Marketing the right to use the PaceSetter name. *Docket Document No. 26, Attachment.* Mr. Manuel Alva-

rez, owner of Iddea, and Mr. Harrah chose the name PaceSetter Marketing because PaceSetter was a recognizable name in the market place. *Id.*

**4.** Mr. Harrah does not own any PaceSetter Marketing stock. *Docket Document No. 19, Exhibit A.*

PaceSetter Marketing at some given time. *Docket Document No. 22, Exhibit 6.*

Cruz, a distributor in Puerto Rico of PaceSetter products, avers that, in spite of the name change from PaceSetter to Pace-Setter Marketing, these two companies are but one. PaceSetter Marketing alleges that it did not enter into any distributor agreement with Cruz. Nonetheless, PaceSetter Marketing has offered to sell to Cruz its products at the usual prices offered to all customers. *Id., Exhibit A.*

## IV.

### Discussion

■ Plaintiff has brought its claim pursuant to the Puerto Rico Dealer's Act, known as Law 75; therefore, as a threshold issue, this court must determine the type of commercial relationship that existed amongst the involved parties. *Cobos Liccia v. DeJean Packing Company, Inc.*, 124 D.P.R. 896, 903 (1989).

Parties agree that Cruz had a distributorship agreement with codefendant PaceSetter; however, codefendant PaceSetter Marketing alleges that it is a separate corporation, that it never was a party to the distribution agreement between PaceSetter and Cruz, and therefore, is not bound by the agreement. Plaintiff Cruz counters this argument, claiming that PaceSetter Marketing is the successor of PaceSetter.

■ Generally, when one company sells its assets to another company, the purchasing company is not responsible for the obligations of the selling company. Courts have carved out several exceptions to this general rule: (1) an express or implied agreement to assume the seller's obligations, (2) a *de facto* consolidation or merger of the corporations, (3) a fraudulent transfer of property from the seller to the buyer, evinced by inadequate consideration for the transfer, or (4) the purchasing company is only a mere continuation of the selling company. 15 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 7122 (rev. ed. 1990); *A.R. Teeters & Associates, Inc. v. Eastman Kodak Co.*, 836 P.2d 1034 (Ariz.App.1992).

Considering these exceptions to the general rule of successor liability, we find that PaceSetter Marketing is not the corporate successor of PaceSetter. PaceSetter was a California corporation that manufactured and sold its products. Because of cash flow problems, it was forced to close its doors. In doing so, PaceSetter sold its machinery to different companies, including Iddea, a Mexican company that organized and incorporated PaceSetter Marketing. Although Iddea purchased some machinery from PaceSetter, PaceSetter Marketing itself did not purchase any assets from PaceSetter. PaceSetter Marketing is an Arizona corporation that markets exhaust system components manufactured by Iddea. *Docket Document No. 19, Exhibit A.* PaceSetter Marketing and PaceSetter have in common the same company president, Mr. Harrah, but do not appear to share any other officers, directors, or shareholders. 15 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 7122, n. 13.

Since PaceSetter Marketing is a separate corporation, it is not responsible for obligations under the distributor agreement between PaceSetter and Cruz. There is no expressed or implied agreement that Pace-Setter Marketing would assume PaceSetter's contractual obligations. We find nothing to suggest that the two companies merged or consolidated.

Plaintiff appears to argue that PaceSetter or PaceSetter Marketing had an obligation to inform Cruz of the demise of PaceSetter, and that, instead, PaceSetter Marketing deceptively fulfilled Cruz' order pursuant to the distributorship agreement between Cruz and PaceSetter. We find that PaceSetter Marketing's decision to fulfill one order placed by Cruz does not give rise to a dealership relationship between Cruz and PaceSetter Marketing. *See Roberco, Inc. v. Oxford Industries, Inc.*, 122 D.P.R. 115, 131–32 (1988) (factors to consider in determining whether or not an entity or person has achieved dealer status are: (1) promotion and closing of sales contracts; (2) existence of an inventory; (3) control over prices; (4) discretion regarding sale terms; (5) delivery of the merchandise and collection of monies for the merchandise, or authority to extend credit; (6) publicity of the product or service; (7) risk and responsibility of its undertakings; (8) physical facilities used to promote, sell or

store the product, and offering of services related to the product to customers). Neither does this allegation alone establish PaceSetter Marketing as the corporate successor of PaceSetter.

## V.

### *Conclusion*

Because we find that there is no distributorship agreement between plaintiff and PaceSetter Marketing, we must dismiss plaintiff's Law 75 claim. Therefore, we **GRANT** defendant's motion for summary judgment.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**