<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-2366

                  TRIANGLE TRADING CO., INC.,

                     Plaintiff, Appellant,

                               v.

                    ROBROY INDUSTRIES, INC.,

                      Defendant, Appellee.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Salvador E. Casellas, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

          Campbell and Wallace, Senior Circuit Judges.

                     _____________________

   Sigfredo A. Irizarry-Semidei for appellant.
   Anthony Cillo, with whom Ira L. Podheiser, Cohen & Grigsby,
P.C. and Bruce J. McGiverin were on brief, for appellee.

                      ____________________

                      December 29, 1999
                      ____________________

        TORRUELLA, Chief Judge.  This case comes before the court
against a backdrop of Puerto Rico and federal case law limiting the
scope of the Puerto Rico Dealers' Act of 1964, 10 L.P.R.A.  278a-
d (1994), commonly referred to as Act 75.  Act 75 was enacted to
"remedy the abusive practices of suppliers who arbitrarily
eliminated distributors after they had invested in the business"
and had successfully established a market in Puerto Rico for the
supplier's product or service.  Gonzlez v. Brown Group, Inc., 628
F. Supp. 436, 438-39 (D.P.R. 1985) (citing Warner Lambert v.
Tribunal Superior, 101 D.P.R. 378, 1 P.R. Offic. Trans. 527
(1973)).  The Act protects dealers only, see Roberco Inc. & Roberto
Coln, v. Oxford Indus., Inc., 122 D.P.R. 115, 132-33 (1988)
(relying on the legislative history), and provides a broad
definition thereof, see 10 L.P.R.A.  278(a).  However, the blurred
line between dealers and other middlemen in the distribution
process, see Gonzlez, 628 F. Supp. at 439, induced a succession of
cases to flesh out the controversial confines of Act 75.
        Thus, we arrive at the case in hand.  The plaintiff-
appellant, Triangle Trading Co., Inc., purports to be a dealer
protected by Act 75 with a claim against Robroy Industries for
terminating its sales agreement without just cause.  The district
court, however, concluded that Triangle is not a dealer under the
Act and granted summary judgment in favor of Robroy.  For the
reasons discussed below, we affirm.
                     I.  STANDARD OF REVIEW
        Summary judgment is an accepted "means of determining
whether a trial is actually required."  Serapin v. Martnez, 119
F.3d 982, 987 (1st Cir. 1997); see also Wynne v. Tufts Univ. Sch.
of Med., 976 F.2d 791, 793-94 (1st Cir. 1992) ("[S]ummary
judgment's role is to pierce the boilerplate of the pleadings and
assay the parties' proof in order to determine whether trial is
actually required.").  Unless the party opposing a motion for
summary judgment can identify a genuine issue as to a material
fact, the motion may end the case.  See Fed. R. Civ. P. 56(c);
Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 428 (1st Cir. 1996).  
A "genuine" issue is one supported by such evidence that "a
reasonable jury, drawing favorable inferences," could resolve it in
favor of the nonmoving party.  Id. at 427; see also Libertad v.
Welch, 53 F.3d 428, 435 (1st Cir. 1995).   
        To defeat Robroy's Motion for Summary Judgment, Triangle
is required to produce "specific facts, in suitable evidentiary
form, to . . . establish the presence of a trialworthy issue."  
Morris v. Government Dev't Bank of Puerto Rico, 27 F.3d 746, 748
(1st Cir. 1994).  "'[C]onclusory allegations, improbable
inferences, and unsupported speculation,'" are insufficient to
establish a genuine dispute of fact.  Smith, 76 F.3d at 428
(quoting Medina-Muoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8
(1st Cir. 1990)); see Serapin, 119 F.3d  at 986; Libertad, 53 F.3d
at 435; Morris, 27 F.3d at 748.   
        We review the district court's summary judgment de novo
and assess the facts in a light most favorable to Triangle.  See
Morris, 27 F.3d at 748.  This standard of review permits us to
uphold the district court's order of summary judgment regardless of
whether we reject or adopt its rationale, so long as an
"independently sufficient ground" is made manifest by the record.  
Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)
(citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48-49 (1st Cir.
1990)); see also Houlton Citizens' Coalition v. Town of Houlton,
175 F.3d 178, 184 (1st Cir. 1999); Hachikian v. FDIC, 96 F.3d 502,
504 (1st Cir. 1996).
                        II.  DISCUSSION
                            A. FACTS
        The following facts are not in dispute.  On April 22,
1985, Triangle and Robroy entered into a Sales Agency Agreement,  
and thereby Triangle became Robroy's exclusive sales agent in
Puerto Rico for certain products manufactured by Robroy.  Per the
Agreement, Triangle was to "use [its] best efforts to promote the
sale" of Robroy's products, and in exchange for all sales procured
in Puerto Rico, Triangle would receive a commission.  
        On February 7, 1996, Robroy announced the termination of
the relationship, effective March 31, 1996.  Triangle initiated
this action on June 2, 1996.  Robroy responded with a Motion for
Summary Judgment asserting that Triangle is not a "dealer" within
the meaning of Act 75.  See 10 L.P.R.A.  278.  After concluding
that, as a matter of law, Triangle's contention that it is a dealer
under the Act is untenable, the district court granted summary
judgment in favor of Robroy on the Act 75 claim.
        The appellant argues that the district court improperly
weighed the evidence and made factual findings in reaching its
determination that Triangle is not an Act 75 Dealer.  Particularly
troublesome is the district court's statement, "the preponderance
of the evidence heavily weighs against Triangle's alleged
distributor status."  Although we concur that the district court's
choice of words is unfortunate, any error is harmless, as we
conclude that the record before us, as a matter of law, does not
support Triangle's Act 75 dealer status.  See Houlton Citizens'
Coalition, 175 F.3d at 184; Hachikian, 96 F.3d at 504; Mesnick, 950
F.2d at 822.
        Construing all facts in favor of Triangle, we acknowledge
that Triangle maintained a facility and dedicated two employees to
Robroy sales; it invested $7,000 per year into building a customer
base for and  promotion of Robroy's products; it received a
commission for each sale in Puerto Rico, even if the customer dealt
with Robroy directly; it held some Robroy inventory in its
warehouse for which it was compensated in the form of an additional
two percent commission; and it assisted Robroy with collection
efforts.  However, we are compelled by Triangle's admissions that
it did not purchase Robroy products for resale; it had no control
over the price or authority to approve credit, discounts, rebates,
concessions or inducements; it did not handle billing or delivery
of products; it did not pay for promotional literature; and it bore
no financial risk in a sale, other than loss of commission.  In
addition, Triangle identified itself as a "commissionist" in its
tax returns and annual reports.

                           B.  ACT 75
        The sole issue before us is whether, on the current
record, the district court properly concluded that Triangle was not
a dealer under Act 75, as a matter of law.  The statute itself does
not resolve the matter.  The Act defines a dealer as a "person
actually interested in a dealer's contract because of his having
effectively in his charge in Puerto Rico the distribution, agency,
concession or representation of a given merchandise or service."  
10 L.P.R.A.  278(a).  The Act expands on this definition by
explaining that a dealer's contract is a  
                 relationship established between a dealer and
        a principal or grantor whereby and
        irrespectively of the manner in which the
        parties may call, characterize or execute such
        relationship, the former actually and
        effectively takes charge of the distribution
        of a merchandise, or of the rendering of a
        service, by concession or franchise, on the
        market of Puerto Rico.

Id.  278(b).
        Despite the intent of the legislature to protect dealers,
the statutory definition of dealer encompasses a wide range of
actors within the distribution process and threatens to extend Act
75's protective sweep well beyond the end that the statute sought
to achieve.  See Sudouest Import Sales Corp. v. Union Carbide, 732
F.2d 14, 16 (1st Cir. 1984) (citing San Juan Mercantile Co., v.
Canadian Trans. Co., 108 D.P.R. 211, 215, 8 P.R. Offic. Trans. 218
(1978)); Roberco, 122 D.P.R. at 124 (citing J. Soler Motors, Inc.
v. Kaiser Keep Int'l Corp., 108 D.P.R. 134, 139, 8 P.R. Offic.
Trans. 138 (1978)).  Consequently, the courts directed their
attention to the key requirement that the dealer "actually and
effectively take[] charge of the distribution."  In other words,
the core question is whether the dealer obtained a certain level of
control over the distribution of the supplier's products in Puerto
Rico.  See EBI, Inc. v. Gator Indus., Inc., 807 F.2d 1, 2-4 (1st
Cir. 1986); Sudouest, 732 F.3d at 15-17; Kolthoff v. Fernndez,
1996 WL 288486, at *3-*6 (D.P.R. 1996); Jorge Rivera Surillo & Co.,
Inc. v. Cerro Copper Prods. Co., 885 F. Supp. 358, 361-62 (D.P.R.
1995); Gonzlez, 628 F. Supp. at 439-41; Mario R. Franceschini,
Inc. v. Riley Co., 591 F. Supp. 414, 415-20 (D.P.R. 1984); Cruz
Ramos, 445 F. Supp. at 984-85; Roberco, 122 D.P.R. at 125-26
(citing Cruz Ramos v. Brother Int'l Corp., 445 F. Supp. 983 (D.P.R.
1978)); San Juan Mercantile, 108 D.P.R. at 215, 8 P.R. Offic.
Trans. 218; J. Soler Motors, 108 D.P.R. at 139, 8 P.R. Offic.
Trans. 138.
        Although we previously suggested criteria by which to
measure this level of control in Sudouest Import Sales Corp. v.
Union Carbide, 732 F.2d 14 (1st Cir. 1984), and EBI, Inc. v. Gator
Industries, Inc., 807 F.2d 1 (1st Cir. 1986), we defer to the
analysis set out in the 1988 opinion of the Supreme Court of Puerto
Rico in Roberco, Inc. & Roberto Coln v. Oxford Industries, Inc.,
122 D.P.R. 115.  The Roberco court reviewed the legislative history
of Act 75 and the existing case law, of both Puerto Rico and
federal courts, to develop an inclusive list of factors to be
weighed equally in consideration of whether a party has the
requisite autonomy to be a dealer under the Act.  See Roberco, 122
D.P.R. at 120-32.  Observing that something beyond "mere contact
with the product as it moves down the chain from manufacturer to
supplier" is necessary, the court restricted the definition of a
dealer to "an independent entrepreneur who has established a
continuing relationship, either fixed or indeterminate, with
another principal for the distribution of a product or
service. . . . geared to create, develop, and coordinate a market
and to obtain new clients."  Id. at 131.  From this definition, the
court derived the following characteristics of a dealership:  
promotion of the product, keeping an inventory, fixing prices,
delivery and billing responsibilities, authority to extend credit,
advertising campaigns, assumption of risk, purchasing the product,
maintaining facilities, and offering product-related services to
clients.  See id. at 131-32.
                     C.  TRIANGLE'S STATUS
        We agree with the appellant that our examination does not
end with the fact that the contract between the parties is entitled
a "Sales Agency Agreement," see 10 L.P.R.A.  278(b), but it
certainly is a point from which to begin, particularly as the
undisputed evidence shows that Triangle identified itself as a
commissionist for tax purposes.  Although we find some support in
the record for Triangle's contention that it developed a market for
Robroy and made a financial investment, those facts alone are not
determinative as they apply to any sales agent or middleman.  See
Gonzlez, 628 F. Supp. at 440; see also Roberco, 122 D.P.R. at 132
("No single factor is conclusive by itself and none has more weight
or importance than the others.").  Instead, we are swayed by the
facts which demonstrate a lack of the requisite control of the
distribution chain.
        In Roberco, the plaintiff obtained purchase orders in
Puerto Rico and forwarded them to the defendant on a commission
basis.  The commissions were based exclusively on sales, regardless
of whether the orders were billed later.  The plaintiff did not buy
the defendant's merchandise to resell it or keep an inventory of
the merchandise, and it was therefore not responsible for
delivering the merchandise.  The plaintiff's contribution to
defendant's advertising was minimal, and in fact most ads placed by
Roberco were for the company itself.  The plaintiff had no
discretion to extend credit to its customers, nor did the plaintiff
handle the billing.  See Roberco, 122 D.P.R. at 119-21.  Similarly,
EBI involved a sales representative that "ma[de] no investment in
promotion, inventories, or facilities; [and] ha[d] no
responsibilities for credit, collections, shipment or
deliveries. . . ."  EBI, 807 F.2d at 4; see also Gonzlez, 628 F.
Supp. at 437-38, 441 (holding that plaintiff who hired no
employees, carried no inventory, rented no warehouse, and did no
advertising, is not an Act 75 dealer).
        Triangle more closely resembles the plaintiffs in
Franceschini and Kolthoff, who arguably invested in the development
of a market and promotion of the suppliers' product, but "'assumed
neither the risks nor the responsibilities that go with an Act 75
dealership.'"  Gonzlez, 628 F. Supp. at 441 (quoting Franceschini,
591 F. Supp. at 420).  The plaintiff in Franceschini, like
Triangle, invested in the business by hiring employees and
advertising the product, but did not have authority to approve or
reject orders, fix prices, or extend credit.  In addition, it did
not bill the customers or handle deliveries.  See Franceschini, 591
F. Supp. at 414-15.   Kolthoff was not a dealer because he could
not close deals, determine prices, or grant discounts or credit.  
Likewise, he did not purchase products for resale and assumed no
credit risk.  See Kolthoff, 1996 WL 288486, at *5.  The distinctive
fact that Triangle actually had a warehouse where it would hold
Robroy's products is insignificant once one accounts for the
contractual requirement that Robroy pay Triangle for this service.
        Based on the record, we are compelled to conclude that
Triangle is indistinguishable from "route or area salesmen who,
without making any investment or commitment or taking any risk
other than the value of their own time, are permitted to take
orders and are paid commissions on orders finally accepted by the
principal."  EBI, 807 F.2d at 3.  We concur with the district court
that, as a matter of law, Triangle is not a dealer and does not
qualify for protection under Act 75.
        Affirmed.

</body>

</html>