**TRIANGLE TRADING CO., INC.,**
Plaintiff, Appellant,

v.

**ROBROY INDUSTRIES, INC.,**
Defendant, Appellee.

No. 98–2366.

United States Court of Appeals,
First Circuit.

Heard Nov. 15, 1999.

Decided Dec. 29, 1999.

Sigfredo A. Irizarry–Semidei for appellant.

Anthony Cillo, with whom Ira L. Podheiser, Cohen & Grigsby, P.C. and Bruce J. McGiverin were on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL and WALLACE,* Senior Circuit Judges.

TORRUELLA, Chief Judge.

This case comes before the court against a backdrop of Puerto Rico and federal case law limiting the scope of the Puerto Rico Dealers' Act of 1964, 10 L.P.R.A. §§ 278a-d (1994), commonly referred to as Act 75.

---

* Of the Ninth Circuit, sitting by designation.

Act 75 was enacted to "remedy the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business" and had successfully established a market in Puerto Rico for the supplier's product or service.[1] *González v. Brown Group, Inc.*, 628 F.Supp. 436, 438–39 (D.P.R.1985) (citing *Warner Lambert v. Tribunal Superior*, 101 D.P.R. 378, 1973 WL 35652 (1973) 1 P.R. Offic. Trans. 527). The Act protects dealers only, *see Roberco Inc. & Roberto Colón, v. Oxford Indus., Inc.*, 122 D.P.R. 115, 132–33 (1988) (relying on the legislative history), and provides a broad definition thereof, *see* 10 L.P.R.A. § 278(a). However, the blurred line between dealers and other middlemen in the distribution process, *see González*, 628 F.Supp. at 439, induced a succession of cases to flesh out the controversial confines of Act 75.

Thus, we arrive at the case in hand. The plaintiff-appellant, Triangle Trading Co., Inc., purports to be a dealer protected by Act 75 with a claim against Robroy Industries for terminating its sales agreement without just cause. The district court, however, concluded that Triangle is not a dealer under the Act and granted summary judgment in favor of Robroy. For the reasons discussed below, we affirm.

## I. STANDARD OF REVIEW

■ Summary judgment is an accepted "means of determining whether a trial is actually required." *Serapión v. Martínez*, 119 F.3d 982, 987 (1st Cir.1997); *see also Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 793–94 (1st Cir.1992) ("[S]ummary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."). Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case. *See* Fed.R.Civ.P. 56(c); *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 428 (1st Cir.1996). A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences," could resolve it in favor of the nonmoving party. *Id.* at 427; *see also Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995).

■ To defeat Robroy's Motion for Summary Judgment, Triangle is required to produce "specific facts, in suitable evidentiary form, to ... establish the presence of a trialworthy issue." *Morris v. Government Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994). " '[C]onclusory allegations, improbable inferences, and unsupported speculation,' " are insufficient to establish a genuine dispute of fact. *Smith*, 76 F.3d at 428 (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)); *see Serapión*, 119 F.3d at 986; *Libertad*, 53 F.3d at 435; *Morris*, 27 F.3d at 748.

■ We review the district court's summary judgment *de novo* and assess the facts in a light most favorable to Triangle. *See Morris*, 27 F.3d at 748. This standard of review permits us to uphold the district court's order of summary judgment regardless of whether we reject or adopt its rationale, so long as an "independently sufficient ground" is made manifest by the record. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48–49 (1st Cir.1990)); *see also Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir.1999); *Hachikian v. FDIC*, 96 F.3d 502, 504 (1st Cir.1996).

1. Act 75 controls the method by which a supplier may terminate its relationship with a dealer. It provides:

Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

10 L.P.R.A. § 278a.

## II. DISCUSSION

### A. FACTS

The following facts are not in dispute. On April 22, 1985, Triangle and Robroy entered into a Sales Agency Agreement, and thereby Triangle became Robroy's exclusive sales agent in Puerto Rico for certain products manufactured by Robroy. Per the Agreement, Triangle was to "use [its] best efforts to promote the sale" of Robroy's products, and in exchange for all sales procured in Puerto Rico, Triangle would receive a commission.[2]

On February 7, 1996, Robroy announced the termination of the relationship, effective March 31, 1996. Triangle initiated this action on June 2, 1996. Robroy responded with a Motion for Summary Judgment asserting that Triangle is not a "dealer" within the meaning of Act 75. *See* 10 L.P.R.A. § 278. After concluding that, as a matter of law, Triangle's contention that it is a dealer under the Act is untenable, the district court granted summary judgment in favor of Robroy on the Act 75 claim.[3]

■ The appellant argues that the district court improperly weighed the evidence and made factual findings in reaching its determination that Triangle is not an Act 75 Dealer. Particularly troublesome is the district court's statement, "the preponderance of the evidence heavily weighs against Triangle's alleged distributor status." Although we concur that the district court's choice of words is unfortunate, any error is harmless, as we conclude that the record before us, as a matter of law, does not support Triangle's Act 75 dealer status.[4] *See Houlton Citizens' Coalition*, 175 F.3d at 184; *Hachikian*, 96 F.3d at 504; *Mesnick*, 950 F.2d at 822.

Construing all facts in favor of Triangle, we acknowledge that Triangle maintained a facility and dedicated two employees to Robroy sales; it invested $7,000 per year into building a customer base for and promotion of Robroy's products; it received a commission for each sale in Puerto Rico, even if the customer dealt with Robroy directly; it held some Robroy inventory in its warehouse for which it was compensated in the form of an additional two percent commission; and it assisted Robroy with collection efforts.[5] However, we are compelled by Triangle's admissions that it did not purchase Robroy products for resale; it had no control over the price or authority to approve credit, discounts, rebates, concessions or inducements; it did not handle billing or delivery of products; it did not pay for promotional literature; and it bore no financial risk in a sale, other than loss of commission. In addition, Triangle identified itself as a "commissionist" in its tax returns and annual reports.

2. The relationship between Triangle and Robroy was modified on November 1, 1992; however, the modification did not materially affect any of the facts relevant to this opinion.

3. The district court simultaneously dismissed without prejudice Triangle's alternative claim for relief under the Puerto Rico Sales Representatives' Act of 1990, 10 L.P.R.A. §§ 279–279h ("Act 21") (1990), so that it could be brought in Pennsylvania in compliance with the forum selection clause in the Sales Agency Agreement. The district court's resolution of the Act 21 claim was not challenged on appeal and is not part of this opinion.

4. The district court additionally disregarded "unsupported assertions that [Triangle] created and developed a market, provided services, and otherwise acted as a distributor for Robroy," contained in affidavits. Although we would review this decision under the abuse of discretion standard, *see Lennon v. Rubin*, 166 F.3d 6, 8 (1st Cir.1999) (citing *Schubert v. Nissan Motor Corp.*, 148 F.3d 25, 29–30 (1st Cir.1998)), we do not need to reach the issue, as we affirm the grant of summary judgment on our independent review of the record. *See Houlton Citizens' Coalition*, 175 F.3d at 184; *Hachikian*, 96 F.3d at 504; *Mesnick*, 950 F.2d at 822.

5. Under the analysis established by the Supreme Court of Puerto Rico in *Roberco*, *see* 122 D.P.R. at 130–32, the contested status of other Robroy customers in Puerto Rico, whether Robroy dealers or Triangle's customers, is immaterial.

## B. ACT 75

The sole issue before us is whether, on the current record, the district court properly concluded that Triangle was not a dealer under Act 75, as a matter of law. The statute itself does not resolve the matter. The Act defines a dealer as a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A. § 278(a). The Act expands on this definition by explaining that a dealer's contract is a

> relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

*Id.* § 278(b).

Despite the intent of the legislature to protect dealers, the statutory definition of dealer encompasses a wide range of actors within the distribution process and threatens to extend Act 75's protective sweep well beyond the end that the statute sought to achieve. *See Sudouest Import Sales Corp. v. Union Carbide,* 732 F.2d 14, 16 (1st Cir.1984) (citing *San Juan Mercantile Co.,* v. *Canadian Trans. Co.,* 108 D.P.R. 211, 215, 1978 WL 48787 (1978) 8 P.R. Offic. Trans. 218); *Roberco,* 122 D.P.R. at 124 (citing *J. Soler Motors, Inc. v. Kaiser Jeep Int'l Corp.,* 108 D.P.R. 134, 139, 1978 WL 48795 (1978) 8 P.R. Offic. Trans. 138). Consequently, the courts directed their attention to the key requirement that the dealer "actually and effectively take[ ] charge of the distribution." In other words, the core question is whether the dealer obtained a certain level of control over the distribution of the supplier's products in Puerto Rico. *See EBI, Inc. v. Gator Indus., Inc.,* 807 F.2d 1, 2–4 (1st Cir.1986); *Sudouest,* 732 F.2d at 15–17; *Kolthoff v. Fernández,* 1996 WL 288486, at *3–*6 (D.P.R.1996); *Jorge Rivera Surillo & Co., Inc. v. Cerro Copper Prods. Co.,* 885 F.Supp. 358, 361–62 (D.P.R.1995); *González,* 628 F.Supp. at 439–41; *Mario R. Franceschini, Inc. v. Riley Co.,* 591 F.Supp. 414, 415–20 (D.P.R. 1984); *Cruz Ramos,* 445 F.Supp. at 984–85; *Roberco,* 122 D.P.R. at 125–26 (citing *Cruz Ramos v. Brother Int'l Corp.,* 445 F.Supp. 983 (D.P.R.1978)); *San Juan Mercantile,* 108 D.P.R. at 215, 8 P.R. Offic. Trans. 218; *J. Soler Motors,* 108 D.P.R. at 139, 8 P.R. Offic. Trans. 138.

Although we previously suggested criteria by which to measure this level of control in *Sudouest Import Sales Corp. v. Union Carbide,* 732 F.2d 14 (1st Cir.1984), and *EBI, Inc. v. Gator Industries, Inc.,* 807 F.2d 1 (1st Cir.1986), we defer to the analysis set out in the 1988 opinion of the Supreme Court of Puerto Rico in *Roberco, Inc. & Roberto Colón v. Oxford Industries, Inc.,* 122 D.P.R. 115. The *Roberco* court reviewed the legislative history of Act 75 and the existing case law, of both Puerto Rico and federal courts, to develop an inclusive list of factors to be weighed equally in consideration of whether a party has the requisite autonomy to be a dealer under the Act. *See Roberco,* 122 D.P.R. at 120–32. Observing that something beyond "mere contact with the product as it moves down the chain from manufacturer to supplier" is necessary, the court restricted the definition of a dealer to "an independent entrepreneur who has established a continuing relationship, either fixed or indeterminate, with another principal for the distribution of a product or service . . . . geared to create, develop, and coordinate a market and to obtain new clients." *Id.* at 131. From this definition, the court derived the following characteristics of a dealership: promotion of the product, keeping an inventory, fixing prices, delivery and billing responsibilities, authority to extend credit, advertising campaigns, assumption of risk, purchasing the product,

maintaining facilities, and offering product-related services to clients. *See id.* at 131–32.

## C. TRIANGLE'S STATUS

We agree with the appellant that our examination does not end with the fact that the contract between the parties is entitled a "Sales Agency Agreement," *see* 10 L.P.R.A. § 278(b), but it certainly is a point from which to begin, particularly as the undisputed evidence shows that Triangle identified itself as a commissionist for tax purposes. Although we find some support in the record for Triangle's contention that it developed a market for Robroy and made a financial investment, those facts alone are not determinative as they apply to any sales agent or middleman. *See González,* 628 F.Supp. at 440; *see also Roberco,* 122 D.P.R. at 132 ("No single factor is conclusive by itself and none has more weight or importance than the others."). Instead, we are swayed by the facts which demonstrate a lack of the requisite control of the distribution chain.

In *Roberco,* the plaintiff obtained purchase orders in Puerto Rico and forwarded them to the defendant on a commission basis. The commissions were based exclusively on sales, regardless of whether the orders were billed later. The plaintiff did not buy the defendant's merchandise to resell it or keep an inventory of the merchandise, and it was therefore not responsible for delivering the merchandise. The plaintiff's contribution to defendant's advertising was minimal, and in fact most ads placed by Roberco were for the company itself. The plaintiff had no discretion to extend credit to its customers, nor did the plaintiff handle the billing. *See Roberco,* 122 D.P.R. at 119–21. Similarly, *EBI* involved a sales representative that "ma[de] no investment in promotion, inventories, or facilities; [and] ha[d] no responsibilities for credit, collections, shipment or deliveries. . . ." *EBI,* 807 F.2d at 4; *see also González,* 628 F.Supp. at 437–38, 441 (holding that plaintiff who hired no employees, carried no inventory, rented no warehouse, and did no advertising, is not an Act 75 dealer).

Triangle more closely resembles the plaintiffs in *Franceschini* and *Kolthoff,* who arguably invested in the development of a market and promotion of the suppliers' product, but " 'assumed neither the risks nor the responsibilities that go with an Act 75 dealership.' " *González,* 628 F.Supp. at 441 (quoting *Franceschini,* 591 F.Supp. at 420). The plaintiff in *Franceschini,* like Triangle, invested in the business by hiring employees and advertising the product, but did not have authority to approve or reject orders, fix prices, or extend credit. In addition, it did not bill the customers or handle deliveries. *See Franceschini,* 591 F.Supp. at 414–15. Kolthoff was not a dealer because he could not close deals, determine prices, or grant discounts or credit. Likewise, he did not purchase products for resale and assumed no credit risk. *See Kolthoff,* 1996 WL 288486, at \*5. The distinctive fact that Triangle actually had a warehouse where it would hold Robroy's products is insignificant once one accounts for the contractual requirement that Robroy pay Triangle for this service.

Based on the record, we are compelled to conclude that Triangle is indistinguishable from "route or area salesmen who, without making any investment or commitment or taking any risk other than the value of their own time, are permitted to take orders and are paid commissions on orders finally accepted by the principal." *EBI,* 807 F.2d at 3. We concur with the district court that, as a matter of law, Triangle is not a dealer and does not qualify for protection under Act 75.

**Affirmed.**