# United States Court of Appeals
## For the First Circuit

No. 03-2085

RE-ACE, INC.,

Plaintiff, Appellee,

v.

WHEELED COACH INDUSTRIES, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lynch, Circuit Judges.

Eyck O. Lugo-Rivera, with whom Martínez Odell & Calabria was
on brief, for appellant.
Alfredo Fernández-Martínez, with whom Delgado & Fernández,
LLP, was on brief, for appellee.

March 30, 2004

**TORRUELLA**, **Circuit Judge**.  Defendant-appellant Wheeled Coach Industries, Inc. ("Wheeled Coach") appeals from the entry of a preliminary injunction by the district court under the Puerto Rico Dealers Act, Law 75 of June 24, 1964, 10 P.R. Laws Ann. § 278-278d ("Law 75"), ordering Wheeled Coach to reinstate an exclusive distribution agreement with plaintiff-appellee Re-Ace, Inc. ("Re-Ace").  After careful review, we affirm.

## I.  Background

We begin by summarizing briefly the relevant facts as found by the district court.  Wheeled Coach, a Florida corporation, manufactures ambulances for sale throughout the United States.  In 1979, Wheeled Coach sold its first ambulance in Puerto Rico, and from that first sale onward, Re-Ace, a Puerto Rico corporation, initiated and managed Wheeled Coach's relations with its clients in Puerto Rico.  Until the events that brought about this suit, Re-Ace had been involved in every sale of a Wheeled Coach ambulance in Puerto Rico.

The parties' relationship, which proceeded uninterrupted for over two decades, was organized thus: Re-Ace promotes and closes the sales contracts for Wheeled Coach ambulances with both private and governmental clients.  Re-Ace does not keep an inventory of Wheeled Coach ambulances, in order to avoid excise taxes and because all ambulances are custom-made by Wheeled Coach to meet the specifications of each client.  Re-Ace determines the

final sales price of the ambulances and thus determines its own profit -- the difference between the final sales price and the list price for the ambulance set by Wheeled Coach. Wheeled Coach also pays a standard commission to Re-Ace of four hundred dollars per ambulance sold. Re-Ace is responsible to the clients for the delivery of the ambulances and may be subject to penalties for delay. Re-Ace is responsible for collecting the clients' payment for the ambulances and must pay Wheeled Coach if an order is subsequently cancelled. Re-Ace is responsible for servicing and honoring the warranty claims of Wheeled Coach's Puerto Rico clients. Over the years, Re-Ace has developed a substantial market for Wheeled Coach ambulances in Puerto Rico and is identified as Wheeled Coach's distributor and representative on the island.

This arrangement proceeded on the basis of an oral contract until 1989, when the parties executed an Exclusive Distributor's Agreement granting Re-Ace exclusive distribution rights for Wheeled Coach ambulances in Puerto Rico.[1] The practical aspects of the parties' relationship continued as before. In 2002, Wheeled Coach sent Re-Ace a new proposed agreement that would have, among other things, made the relationship non-exclusive. Re-Ace

---

[1] This was a standard agreement sent to Re-Ace by Wheeled Coach. Wheeled Coach argues that, because it has not been able to locate in its records the signed copy of the agreement Re-Ace claims to have sent back to Wheeled Coach, the agreement was never executed by Re-Ace. The district court found that Re-Ace signed the agreement and that it has been in effect since 1989.

rejected this agreement and business went on as usual. In February 2003, Wheeled Coach terminated its relationship with Re-Ace and entered into an agreement granting exclusive distribution rights to Bill de León Specialty Vehicles ("Bill de León").

On March 14, 2003, Re-Ace commenced this action seeking injunctive relief and recovery of damages for an alleged illegal termination of an exclusive distribution agreement in violation of Law 75. Re-Ace requested a preliminary injunction ordering the reestablishment of the prior relationship between Re-Ace and Wheeled Coach and enjoining Bill de León from representing Wheeled Coach in Puerto Rico for the duration of the suit. A preliminary injunction hearing was held on May 13, 2003. On June 25, 2003, the district court issued a preliminary injunction ordering Wheeled Coach to reinstate the exclusive distribution agreement with Re-Ace and enjoining Wheeled Coach from entering into or maintaining any distribution agreement with third parties.

On July 8, 2003, Wheeled Coach moved for reconsideration, requesting that the district court vacate the injunction. Wheeled Coach argued that the district court erred in identifying Re-Ace as a distributor under Law 75 and in disregarding the procedural safeguards of Rule 65 of the Federal Rules of Civil Procedure by issuing a preliminary injunction without ordering Re-Ace to post any form of security and without notice to an adverse party, Bill

-4-

de León.[2]  On July 31, 2003, the district court denied the motion for reconsideration, but imposed a bond of $50,000 on Re-Ace. Wheeled Coach appeals.

## II.  **Analysis**

Law 75 was enacted "to remedy the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service."  Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)(quoting González v. Brown Group, Inc., 628 F. Supp. 436, 438-39 (D.P.R. 1985)(internal quotations omitted)).  To this end, Act 75 regulates the termination of a supplier's relationship with a dealer, providing that, regardless of any unilateral right to terminate present in a contract, "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship . . . , except for just cause."  10 P.R. Laws Ann. § 278a.[3]

Provisional remedies under Law 75 are provided by the statute:

> In any litigation in which there is . . . involved the termination of a dealer's contract . . . , the Court may grant, during

---

[2]  Re-Ace has subsequently dismissed its claims against Bill de León.

[3]  The terms "dealer," "distributor," and "distributorship" are used interchangeably in the caselaw concerning Law 75.

-5-

the time the litigation is pending resolution, any provisional remedy . . . ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.

10 P.R. Laws Ann. § 278b-1 ("Article 3A").[4] The question before us is whether there has been a sufficient showing that Re-Ace is a "dealer" who may take advantage of Law 75's provisional remedies.

This court has jurisdiction to hear interlocutory appeals of preliminary injunction orders under 28 U.S.C. § 1291(a)(1). In reviewing a preliminary injunction, "we scrutinize abstract legal matters de novo, findings of fact for clear error, and judgment calls with considerable deference to the trier." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)(citing Langlois v. Abington Hous. Auth., 207 F.2d 43, 47 (1st Cir. 2000)). Despite Wheeled Coach's contentions to the contrary, our review of the evidence before the district court at the

---

[4] This does not mean, however, that the procedural safeguards provided by the Rules of Civil Procedure are inapplicable to the provisional remedies provided by Law 75. Aybar v. F. & B. Mfg. Co., Inc., 498 F. Supp. 1184, 1192 (D.P.R. 1980). On appeal, Wheeled Coach argues that the district court abused its discretion by imposing on Re-Ace an inadequate injunction bond of $50,000. Wheeled Coach has subsequently filed a motion in the district court requesting an increase to the bond, and in an order dated November 26, 2003, the district court increased the bond to $100,000.

preliminary injunction hearing fails to indicate clear error in the district court's findings of fact.[5]  Thus, on the basis of the facts found by the district court, we review de novo the question of whether the relationship between Re-Ace and Wheeled Coach warrants Re-Ace's protection for preliminary injunction purposes as a dealer under Law 75.

Law 75 defines a dealer as a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service."  10 P.R. Laws Ann. § 278(a).  A dealer's contract is defined as a "relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico."  10 P.R. Laws Ann. § 278(b).

Both federal and Puerto Rico courts have recognized that this broad definition of a dealer "encompasses a wide range of actors within the distribution process and threatens to extend Act

_____

[5]  Although failing to describe some details of the commercial transactions between Re-Ace and Wheeled Coach, particularly the role of the Ford dealerships associated with Re-Ace, the district court's findings provide a summary of the relevant aspects of the relationship sufficient for the purposes of determining whether Re-Ace is a dealer under Law 75.

75's protective sweep well beyond the end that the statute sought to achieve." Triangle Trading, 200 F.3d at 4. In Triangle Trading, we outlined the factors to be considered in determining whether an actor is a dealer protected by Law 75, relying on the Supreme Court of Puerto Rico's decision in Roberco, Inc. v. Oxford Indus., Inc., 22 P.R. Offic. Trans. 111 (1988):

> The Roberco court reviewed the legislative history of Act 75 and the existing case law, of both Puerto Rico and the federal courts, to develop an inclusive list of factors to be weighed equally in consideration of whether a party has the requisite autonomy to be a dealer under the Act. Observing that something beyond mere contact with the product as it moves down the chain from manufacturer to supplier is necessary, the court restricted the definition of a dealer to an independent entrepreneur who has established a continuing relationship, either fixed or indeterminate, with another principal for the distribution of a product or service . . . geared to create, develop, and coordinate a market and to obtain new clients. From this definition the court derived the following characteristics of a dealership: promotion of the product, keeping an inventory, fixing prices, delivery and billing responsibilities, authority to extend credit, advertising campaigns, assumption of risk, purchasing the product, maintaining facilities, and offering product-related services to clients.

Triangle Trading, 200 F.3d at 4-5 (citing Roberco, 22 P.R. Offic. Trans. at 115, 120-32)(internal quotations omitted). Triangle Trading makes clear that Re-Ace must do more than provide evidence that it developed a market for Wheeled Coach and made a financial

-8-

investment, because "those facts alone are not dispositive as they apply to any sales agent or middleman." Id. at 5.

Wheeled Coach urges this court to conclude that Re-Ace is not a dealer for the purposes of Law 75 because Re-Ace, inter alia, does not purchase the ambulances for resale, does not maintain an inventory of Wheeled Coach ambulances in Puerto Rico, and does not assume a risk of financial loss beyond any fees or fines imposed in the case of late or failed delivery of ambulances. Re-Ace contends that its failure to purchase or maintain an inventory of Wheeled Coach ambulances and the resulting diminution of some of the typical financial risks of distributorship are due to the customized nature of the item being sold, since each ambulance must be manufactured to meet the precise specifications of the client.

The district court agreed, concluding that "since 1979, [Re-Ace] has performed the duties traditionally performed by a distributor, tempered to the particular product to be distributed, in this case, custom made ambulances." Re-Ace, Inc. v. Wheeled Coach Indus., Inc., 270 F. Supp. 2d 223, 231 (D.P.R. 2003). In reaching this conclusion, the district court noted that the Supreme Court of Puerto Rico has made it clear that when considering the factors in Roberco "not all had to be satisfied in order to determine that a plaintiff is an Act 75 distributor. Instead, a trial court must consider said factors in light of the evidence presented." Id. at 232. The court distinguished the case of Cobos

_Liccia_ v. _DeJean Packing Co., Inc._, 124 D.P.R. 896 (1989), where the plaintiff was denied dealer status under Law 75 because it failed to fulfill even one of the _Roberco_ criteria. _Id._ at 231-33.

Here, Re-Ace fulfills several of the _Roberco_ criteria, including active promotion and closing of contracts, exerting control over prices,[6] taking responsibility for delivery (as evidenced by their exposure to fines for late delivery), and assuming the risks and responsibility of its actions (e.g., if a client subsequently decides not to purchase an ambulance after it is ordered, Re-Ace must compensate Wheeled Coach).

Wheeled Coach argues that Re-Ace cannot be a dealer under Law 75 because it never obtains title to the ambulances, directing the court's attention to _Franceschini_ v. _Riley Co._, 591 F. Supp. 414, 419 (D.P.R. 1984)("[A]n Act 75 distributor is not a mere agent of the principal but acts on its own with full ownership of the goods sold."). In _Franceschini_, however, the court decided that the plaintiff was not a Law 75 dealer because it was "a mere forwarder of orders who did not have the authority to close or conclude the sales contracts it promoted." _Id._ at 420. Despite the court's reference to ownership, then, the decision in _Franceschini_ relies on its conclusion that "the ultimate matter to

---

[6] Wheeled Coach argues that because its price list determines the "price" of the ambulances, Re-Ace does not "exert control over prices." However, Re-Ace determines the final sales price of the ambulances and in doing so also determines its own remuneration in a manner consistent with the role of a dealer under Law 75.

-10-

be determined is whether all activities performed, be they warehousing, delivery, advertising, add up to the development of a market through promotion and closing of sales contracts." Id. at 418. So, while "purchasing the product" is one of the Roberco factors to be considered, it is not dispositive. Roberco, 22 P.R. Offic. Trans. at 123 ("No single factor is conclusive by itself and none has more weight or importance than the others.").

In a related argument, Wheeled Coach contends that Re-Ace is not entitled to invoke Law 75 because Re-Ace is not a Law 75 dealer but rather an exclusive sales representative within the meaning of Puerto Rico's Sales Representative Act of 1990, 10 P.R. Laws Ann. § 279 ("Law 21").[7] Law 21 was enacted to protect sales representatives and other local agents who fell short of the requirements for "dealership" status under Law 75. Innovation Mktg. v. Tuffcare Inc., 31 F. Supp. 2d 218, 220 & n.1 (D.P.R. 1998); Tavarez v. Champion Prods., Inc., 903 F. Supp. 268, 271 (D.P.R. 1995). It is modeled closely on Law 75 and, with limited exceptions, provides identical remedies. See Codecom, Inc. v. Alcatel Standard, S.A., 103 F. Supp. 2d 65, 67 & n.4 (D.P.R. 2000).

---

[7] Re-Ace argues that Wheeled Coach forfeited any argument concerning Law 21 by failing to raise the issue in the district court. This objection misunderstands Wheeled Coach's argument. Wheeled Coach does not claim relief on the basis of Law 21 (an argument that would indeed be forfeited), but rather cites Law 21 as evidence of what Law 75 is not intended to cover. This is consistent with Wheeled Coach's contention, both in the district court and on appeal, that Law 75 does not apply to Re-Ace.

Law 21, however, applies only to sales representative contracts formed after December 5, 1990. Innovation Mktg., 31 F. Supp. 2d at 220; Tavarez, 903 F. Supp. at 272. Wheeled Coach argues that its relationship with Re-Ace is a "sales representation contract" under Law 21, which means that the Puerto Rico legislature did not expect Law 75 to apply in this context. Re-Ace's suit under Law 75, Wheeled Coach continues, is simply an attempt to evade the 1990 prospective limitation on Law 21 claims.[8]

It is a plausible argument. Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico. It includes the figure known as 'manufacturer's representative.'" 10 P.R. Laws Ann. § 279(a); Orba, Inc. v. MBR Indus., Inc., 49 F. Supp. 2d 67, 71 (D.P.R. 1999). A "sales representation contract," in turn, is defined as follows:

> The agreement established between a sales representative and a principal, through which . . . the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and

[8] As previously noted, the relationship between Re-Ace and Wheeled Coach dates from 1979, and the two companies executed a written contract in 1989.

-12-

> the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration.

10 P.R. Laws Ann. § 279(c). Aspects of Re-Ace's relationship with Wheeled Coach do appear, at first glance, to fall within this definition -- for example, Wheeled Coach pays Re-Ace a commission or remuneration for each vehicle sold; Wheeled Coach is bound by sales made by Re-Ace; and Re-Ace never acquires title in the ambulances. As previously discussed, however, these facts, when viewed within the context of a custom-made product, can likewise be seen to fit within "the duties traditionally performed by a distributor, tempered to the particular product to be distributed, in this case, custom made ambulances." Re-Ace, Inc., 270 F. Supp. 2d at 231. The distinction between a Law 75 dealer and a Law 21 sales representative is "essentially a fact-specific one." Innovation Mktg., 31 F. Supp. 2d at 221; Triangle Trading Co. v. Robroy Indus., Inc., 952 F. Supp. 75, 78 (D.P.R. 1997). On the basis of the evidence before it at the preliminary injunction hearing, it was not clear error for the district court to determine that Re-Ace is a Law 75 dealer rather than a Law 21 sales representative.

We conclude that the district court did not err in determining that Re-Ace deserved the provisional protections provided to dealers by Law 75. Thus, the district court "was

within its discretion in finding that public policy and the interests of the parties would be best served by strict temporary enforcement of the letter of the agreement." DeMoss, 493 F.2d at 1015. Of course, Wheeled Coach has the opportunity to present further evidence and to argue anew the question of Re-Ace's status as a dealer at trial. See Luis Rosario, Inc. v. Amana Refrigeration, Inc., 733 F.2d 172, 173-74 (1st Cir. 1984).

### III. Conclusion

The preliminary injunction issued by the district court is **affirmed**.