# United States Court of Appeals
## For the First Circuit

No. 05-1631

WATERPROOFING SYSTEMS, INC.,

Plaintiff, Appellee,

v.

HYDRO-STOP, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Rafael Escalera-Rodríguez, with whom Thomas J. Trebilcock-Horan, Alberto R. López-Rocafort, and Reichard & Escalera were on brief, for appellant.
Stuart A. Weinstein-Bacal, with whom Liana Colón-Valentín and Weinstein-Bacal & Miller, P.S.C. were on brief, for appellee.

March 2, 2006

**TORRUELLA**, **Circuit Judge**.  Appellant Hydro-Stop, Inc. ("Hydro-Stop") appeals from an order granting a preliminary injunction in favor of Appellee Waterproofing Systems, Inc. ("Waterproofing") under the Puerto Rico Dealers Act, Law 75 of June 24, 1964, 10 P.R. Laws Ann. §§ 278-278d ("Law 75"), enjoining Hydro-Stop from terminating their exclusive distribution agreement ("Distribution Agreement").

On November 5, 2004, Waterproofing filed a complaint in the United States District Court for the District of Puerto Rico alleging that Hydro-Stop's unilateral termination of their Distribution Agreement violated Law 75 because it was without "just cause," and requesting a Temporary Restraining Order ("TRO") to compel the continuation of their business relationship.

The district court judge referred the case to the magistrate judge, and the parties consented to the magistrate's jurisdiction over any and all proceedings in accordance with Rule 73 of the Federal Rules of Civil Procedure.[1]  On February 17, 2005,

---

[1]  Rule 73 provides:

> a) Powers; Procedure. When specially designated to exercise such jurisdiction by local rule or order of the district court and when all parties consent thereto, a magistrate judge may exercise the authority provided by Title 28, U.S.C. § 636(c) and may conduct any or all proceedings, including a jury or nonjury trial, in a civil case.
> . . .
> c) Appeal. In accordance with Title 28, U.S.C. § 636 (c)(3), appeal from a judgment entered upon direction of a magistrate judge in proceedings under this rule will

after evidentiary hearings, the magistrate entered an Opinion and Order granting the preliminary injunction on the ground that Hydro-Stop had terminated the Distribution Agreement without just cause. On March 3, 2005, Hydro-Stop filed a Motion Requesting Reconsideration and/or to Alter or Amend Judgment pursuant to Rule 52(b) of the Federal Rules of Civil Procedure. On March 8, the magistrate denied the motion, and on March 28, 2005 Hydro-Stop filed a Notice of Interlocutory Appeal to this court. After careful consideration, we affirm.

## I.

Waterproofing has been in the business of distributing roof sealants and waterproofing products in Puerto Rico since 1997. In 1999, Waterproofing began to distribute Hydro-Stop's products in Puerto Rico pursuant to a verbal agreement between the two companies. On January 1, 2000, Hydro-Stop and Waterproofing entered into the Distribution Agreement which designated Waterproofing as Hydro-Stop's exclusive distributor in Puerto Rico.

Until Hydro-Stop terminated the Distribution Agreement in March 2004, Waterproofing was responsible for all sales of Hydro-Stop products in Puerto Rico. Waterproofing consistently exceeded the annual sales quotas set forth in the Distribution Agreement, and for the past five years Waterproofing has had higher sales than

lie to the court of appeals as it would from a judgment of the district court.

any other Hydro-Stop distributor in the world. During the past five years, Hydro-Stop has earned profits of at least $1.5 million from Waterproofing's sales.

As part of their ordinary business relationship, Hydro-Stop normally extended credit to Waterproofing for the purchase of Hydro-Stop products. When Waterproofing's debt reached $200,000 in 2001, Hydro-Stop advised that it would extend no further credit until the debt was repaid. In order to pay down the debt, Waterproofing agreed to pay a "premium" of $15 per pail of Hydro-Stop product, and by early 2003, the outstanding debt had been reduced to $35,000. In late 2002 or early 2003, Hydro-Stop reinstated the credit line available to Waterproofing, up to a limit of $100,000.

At a meeting held on or about November 5, 2003 in Charleston, South Carolina, Hydro-Stop advised Waterproofing of its intent to abrogate the exclusivity of the Distribution Agreement and to distribute Hydro-Stop products directly in Puerto Rico. Waterproofing objected, but Hydro-Stop began making direct sales of its products in Puerto Rico, at discounted prices and with credit terms that Waterproofing could not match. Hydro-Stop's direct sales yielded nearly twice the gross profits as those in which Waterproofing served as intermediary.

In late 2003, when Waterproofing had reached its $100,000 credit limit, it advised Hydro-Stop of a profitable opportunity to

contract with Promo Export, an agency of the Government of Puerto Rico ("Promo Export Project"). Hydro-Stop would provide the materials, and Waterproofing would provide the labor to complete the job. Hydro-Stop advanced Waterproofing a total of $69,200.50 for materials necessary for Phases I and II of the three-phase project. To guarantee that Hydro-Stop would be repaid, the three parties entered into an agreement, pursuant to which Promo Export was to issue joint checks payable to both Waterproofing and Hydro-Stop for the work performed for the Promo Export Project ("Joint Check Agreement").

On or about March 2, 2004, upon the completion of Phase I, Promo Export issued the first check, payable jointly to Hydro-Stop and Waterproofing, in the amount of $88,590.60. Waterproofing President Luis Esteves IV ("Esteves") endorsed the check with Waterproofing's name and Hydro-Stop's name and deposited it in Waterproofing's account in Puerto Rico. On March 8, 2004, Esteves obtained a manager's check from Westernbank in Puerto Rico, payable jointly to Hydro-Stop and Waterproofing, in the amount of $66,442.95. Esteves sent the check to Hydro-Stop with a letter, dated March 5, 2004, authorizing Hydro-Stop to cash the check.

In a letter dated March 11, 2004, Hydro-Stop informed Waterproofing that it was terminating the Distribution Agreement because Waterproofing had "misappropriated $22,147.65 of money that

-5-

rightfully belongs to Hydro-Stop, Inc. based upon [the] joint check agreement with Promo Export."

## II.

We have jurisdiction to hear interlocutory appeals of preliminary injunction orders under 28 U.S.C. § 1291(a)(1). In our review of preliminary injunctions, "we scrutinize abstract legal matters de novo, findings of fact for clear error, and judgment calls with considerable deference to the trier." Re-Ace, Inc. v. Wheeled Coach Indus., Inc., 363 F.3d 51, 55 (1st Cir. 2004) (internal citation and quotation marks omitted).

### A. Just Cause

Puerto Rico Law 75 was enacted specifically to "remedy the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service." Triangle Trading Co. v. Robroy Indus, Inc., 200 F.3d 1, 2 (1st Cir. 1999) (internal citation and quotation marks omitted). Accordingly, Law 75 provides that "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship . . . except for just cause." 10 P.R. Laws Ann. § 278a.

The critical issue in this case is whether Hydro-Stop had "just cause" to terminate the Distribution Agreement. Law 75 provides that just cause is

> [n]onperformance of any of the <u>essential obligations</u> of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service.

10 P.R. Laws. Ann. § 278(d) (emphasis added).

Hydro-Stop alleges two separate grounds to support its claim of just cause: Waterproofing's consistent failure to make timely payments, and the alleged fraud and breach of trust arising from Waterproofing's endorsement and deposit of the Promo Export check. We will deal with each in turn, bearing in mind that the issue of just cause under Law 75 is a question of fact reviewable for clear error. See <u>R.W. Int'l Corp.</u> v. <u>Welch Foods, Inc.</u>, 88 F.3d 49, 51 (1st Cir. 1996).

During the course of their business relationship, Waterproofing was often late in its payments to Hydro-Stop, and the magistrate concluded that because Hydro-Stop had not previously terminated the Distribution Agreement because of late payment, it could not suddenly change course without violating the principle enshrined in Law 75. In short, the magistrate held that "what was not just cause then is not just cause now." We find this conclusion troubling.

This court has held that "paying for goods on time normally is one of the essential obligations of the dealer's contract," the non-fulfillment of which can constitute just cause

-7-

under Law 75.  PPM Chemical Corp. of Puerto Rico v. Saskatoon Chemical Ltd., 931 F.2d 138, 139 (1st Cir. 1991) (internal citation and quotation marks omitted).  However, we have recognized an exception in those unusual cases where "a supplier does not care about late payments."  Id.; see also Biomedical Instrument and Equip. Corp. v. Cordis Corp., 797 F.2d 16, 18 (1st Cir. 1986). Waterproofing alleges -- and the magistrate seems to have agreed -- that Hydro-Stop did not care about Waterproofing's late payments, and thus that the late payments did not constitute just cause for termination of the Distribution Agreement.

For its part, Hydro-Stop alleges that Waterproofing's persistent cash flow problems led to a pattern of continuously late payments during the course of their relationship, and that it was forced to go to great lengths in order to keep Waterproofing afloat, including extending credit, creating payment plans, and granting special concessions.  At one point, Hydro-Stop President Nicholas Causey ("Causey") made a personal loan of $80,000 to Waterproofing's vice president so that Waterproofing could pay off some of its outstanding debt.

These efforts indicate that far from "not caring" about the payment schedule, Hydro-Stop was in fact actively engaged with the project of trying to reduce Waterproofing's ever-growing debt. It may well be that Hydro-Stop was willing to overlook the untimely payments because of Waterproofing's successful sales records for

-8-

the first four years of their relationship. However, we think it quite possible that there was a limit to the supplier's patience. In March 2004, when Hydro-Stop unilaterally terminated the Distribution Agreement, Waterproofing owed Hydro-Stop more than $120,000. Despite the fact that the payment term was then 60 days, more than $30,000 had been outstanding for longer than that period. The magistrate would have us hold that while Waterproofing's indebtedness in March 2004 might have constituted just cause if it had been the first such occurrence, it could not legitimately have been the proverbial straw to break the camel's back. We disagree. It is contrary to the principle enshrined in Law 75 to require that suppliers terminate distribution agreements immediately upon distributors' failure to pay timely, or risk being forever banned from so doing. Such a result would discourage efforts on the part of suppliers to reach creative solutions to enable the success of long-term relationships with distributors in Puerto Rico.

Despite our disagreement with the magistrate's disposal of Hydro-Stop's claim of just cause on the basis of Waterproofing's failure to pay timely, our standard of review is for clear error, which we do not find here. Although we can imagine a situation in which a distributor does not take action to terminate its relationship with a supplier for late payments until many such occurrences have genuinely exhausted its patience, there is sufficient evidence on the record to support the magistrate's

conclusion that this was not such a situation. Despite Hydro-Stop's allegations to the effect that Waterproofing "continuously" failed to make timely payment during the course of their business relationship, in a letter dated March 2002, Causey congratulated Waterproofing on an "extraordinary job . . . [F]or the second year in a row Waterproofing Systems is at the top of the list of all our distributors in total sales." We find no hint of dissatisfaction in those words. And in November 2003, when Hydro-Stop first informed Waterproofing of its intention to abrogate the exclusivity of the Distribution Agreement so that it could distribute Hydro-Stop products directly in Puerto Rico, Waterproofing was within its credit limit and current in its payments. In that month, despite Waterproofing's rejection of the proposed change and without its knowledge, Hydro-Stop -- through its own agent in Puerto Rico -- began making direct sales of its products to Waterproofing's customers, at discounted prices and with credit terms that Waterproofing could not match. Furthermore, Hydro-Stop's agent advised some of Waterproofing's customers that Waterproofing was no longer Hydro-Stop's distributor in Puerto Rico. Hydro-Stop's incentive was clear -- its direct sales yielded double the gross profits that Waterproofing's sales brought in. It was in this context that Waterproofing first approached Hydro-Stop with the Promo Export Project proposal. After hearing testimony from both parties, the magistrate credited Waterproofing's theory that Hydro-

Stop's claim of just cause on the basis of late payments was merely a pretext for abrogating the Distribution Agreement.  We find no reason to upset the lower court's determination.

Hydro-Stop also alleges just cause to terminate the Distribution Agreement because of Waterproofing's endorsement and deposit of the Promo Export check, and subsequent retention of funds.  The magistrate found that it was common practice between the parties for Waterproofing to accept and deposit checks issued to both companies and to remit payment to Hydro-Stop, and thus that such action with regard to the Promo Export check was not fraudulent.  On appeal, Hydro-Stop contends that this finding is not supported by the record and constitutes "clear error."  Hydro-Stop's argument to this end proceeds in three parts: first that Waterproofing's endorsement and deposit of the Promo Export check was illegal under Puerto Rico Law; next that Waterproofing's actions breached the Joint Check Agreement; and finally that Waterproofing's breach of the Joint Check Agreement was in bad faith, thus constituting just cause for terminating the Distribution Agreement.

Hydro-Stop contends Waterproofing's endorsement of the Promo Export check violated Puerto Rico Law.  Under the Law of Negotiable Instruments,

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession

of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. <u>If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively</u>.

19 P.R. Laws Ann. § 510(d) (emphasis added). Hydro-Stop maintains that, under the Joint Check Agreement, neither party could unilaterally endorse and deposit the Promo Export check. However, Hydro-Stop does not allege that the check itself was payable to Hydro-Stop and Waterproofing "not alternatively." Thus, we must conclude that the instrument was ambiguous as to this point, and by law such an instrument "may be negotiated, discharged, or enforced by any or all of them in possession of the instrument." <u>Id.</u>

Hydro-Stop next contends that Waterproofing breached the Joint Check Agreement in two separate ways – both by unilaterally endorsing and depositing the Promo Export check, and also by retaining some of the funds in its own account. The Joint Check Agreement, signed by Promo Export, Waterproofing, and Hydro-Stop, provides that,

> As security for payment of amounts due from Waterproofing Systems to Hydro-Stop, Inc. (Manufacturer), for materials supplied to Waterproofing Systems and Promo Export (Owner/Contractor) agree that all payments from Promo Export (Owner/Contractor) to Waterproofing Systems in connection with Project Centro Mercantil Internacional, San Juan, PR, (Project) will be made by check issued jointly payable to Waterproofing

-12-

Systems and Hydro-Stop, Inc. Waterproofing Systems and Promo Export (Owner/Contractor) agree that the total value of such payments will be at least $246,085.00. Waterproofing Systems acknowledges that it remains fully liable to Hydro-Stop for payment for materials to the extent Hydro-Stop, Inc. has not received payment for this agreement.

On its face, the Joint Check Agreement requires merely that all checks from the Promo Export project be "jointly payable" to both parties. It is silent as to the question of whether either party was prohibited from unilaterally endorsing and depositing such checks. The magistrate looked to the customary practice of the parties and found "credible evidence" that this very sequence of events had been repeated at least one hundred times during the course of their relationship.[2] The magistrate further found that "[Hydro-Stop's president] never voiced an objection [to the practice] as long as Hydro-Stop was paid by Waterproofing." It is difficult to understand why, if Hydro-Stop wanted to see an end to this practice, it was not specifically addressed in the Joint Check Agreement or another agreement between the parties.

Hydro-Stop also maintains that Waterproofing violated the Joint Check Agreement by retaining some of the funds derived from

---

[2] Hydro-Stop raises for the first time on appeal an argument that the magistrate should not have considered evidence pertaining to the general practice of the parties because such evidence was extrinsic and barred by the Puerto Rico Parol Evidence Rule. We do not address this argument because "[t]heories not raised in the district court cannot be raised for the first time on appeal." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 n.3 (1st Cir. 2005).

-13-

the Promo Export check. Hydro-Stop insists that the entirety of the difference between the amount of the Promo Export check and the amount of the Westernbank manager's check -- $22,147.65 -- constituted misappropriated funds. By contrast, the magistrate found that the amount of the manager's check was only $2,757.55 less than the total amount -- $69,200.50 -- Waterproofing owed Hydro-Stop for materials used in both Phase I and II despite the fact that the Promo Export check was payment for Phase I only. In other words, Waterproofing claims -- and the magistrate agreed -- that the manager's check actually reflected a seven-month advance payment to Hydro-Stop for materials used in Phase II. The Joint Check Agreement provides only that Waterproofing "remains fully liable to Hydro-Stop for payment for materials." Nowhere in the Joint Check agreement or in any other written agreement before this Court is there any provision as to the payment schedule for the remainder of the proceeds from the Promo Export project. As evidence that Waterproofing misappropriated more than $20,000, Hydro-Stop merely directs our attention to the testimony of Causey and co-owner, Richard Daniel ("Daniel"), who attested to Hydro-Stop's interpretation of the Joint Check Agreement, according to which Waterproofing was obligated to sign each check received from the Promo Export project and physically send the signed instrument to Hydro-Stop for deposit in Hydro-Stop's account. Hydro-Stop fails to develop any argument that might enable us to find error in

the magistrate's decision with regard to the alleged misappropriation.

Hydro-Stop next contends that Waterproofing's retention of funds from the Promo Export check was in bad faith.[3] Under Puerto Rico law, there is <u>dolus</u>, or "bad faith" when a party has demonstrated "willful and voluntary failure to comply with [a legal obligation] knowing that he is carrying out an unfair act." <u>Canales</u> v. <u>Pan American</u>, No. R-81-12 R-80-318, 1982 WL 210645 (P.R. Mar. 18, 1982) (trans). Hydro-Stop alleges that Esteves acted in bad faith when he "unilaterally decided to fraudulently endorse" the Promo Export check and then "attempt[ed] to conceal" his actions. As evidence, Hydro-Stop points to Esteves's admission that after endorsing and depositing the Promo Export check, he purchased a manager's check from Westernbank in Puerto Rico, made payable to both Hydro-Stop and Waterproofing, which he then endorsed and sent to Hydro-Stop. From this, Hydro-Stop concludes that Esteves willingly and knowingly violated his legal obligation, contending that "[t]he intent was obvious, to pass off Westernbank Manager's Check as the Promo Export check." The threshold inquiry in determining whether Esteves acted in bad faith is whether he failed to comply with a legal obligation. Because we find that he was neither prohibited from endorsing and depositing the check nor

---

[3] Hydro-Stop also alleges fraud but does not develop this argument and so we do not consider it. <u>Sunoco, Inc.</u> v. <u>Makol</u>, 372 F.3d 31, 38 (1st Cir. 2004).

-15-

obligated to remit the totality of the proceeds to Hydro-Stop, we find that he could not have acted in bad faith.

## B. Preliminary Injunction

Because this is a diversity case, the substantive law of Puerto Rico applies. DeMoss v. Kelly Services, Inc., 493 F.2d 1012, 1015 (1st Cir. 1974); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Article 3A of the Puerto Rico Dealer's Act, in any case involving the termination of a "dealer's contract,"

> the court may grant, during the time the litigation is pending solution, any provisional remedy . . . ordering any of the parties, or both, to continue in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.

10 P.R. Laws Ann. § 278b-1 (emphasis added). Under Law 75, a preliminary injunction is available to order parties to continue their business relationships under existing distribution agreements pending litigation. Re-Ace, 363 F.3d at 54-55. A preliminary injunction under this statutory provision "is not tied to a showing of irreparable injury or to probability of success in the case on the merits, but rather to the policies of the Act in promoting the continuation of dealership agreements and the strict adherence to

-16-

the provisions of such agreements." DeMoss, 493 F.2d at 1015; see also Luis Rosario, Inc. v. Amana Refrigeration, Inc., 733 F.2d 172, 173 (1st Cir. 1984).

The fundamental "public policy of the Act is to prevent dealer termination without just cause." Luis Rosario, 733 F.2d at 173 (internal citation and quotation marks omitted). Having found that public policy considerations militate in favor of the continued operation of the Distribution Agreement, we turn to the interests of the parties to determine whether a preliminary injunction is appropriate. Hydro-Stop is an international company with annual revenues of more than $7.5 million annually, whose revenues have steadily increased since it entered into the Distribution Agreement with Waterproofing, in large part because of the latter's success in creating a market for Hydro-Stop products in Puerto Rico. By contrast, Waterproofing is a small, closely held family business which relies almost exclusively on its sale of Hydro-Stop products. Since Hydro-Stop began selling its products directly to Waterproofing clients in Puerto Rico, Waterproofing has been forced to lay off 127 employees. The magistrate found that Hydro-Stop's actions have already clearly and unequivocally harmed Waterproofing's reputation in Puerto Rico. We accord considerable deference to the magistrate's judgment that the balance of the parties' interests with regard to a preliminary injunction favors Waterproofing. Although the traditional common law test for a

preliminary injunction does not apply here, we have found that "the court's view of the merits would certainly affect its judgment of the weight of the parties' interests and of the injunction's effect on the statutory policies." Pan Am. Computer Corp. v. Data Gen. Corp., 652 F.2d 215, 217 (1st Cir. 1981). The magistrate found that there was a "substantial likelihood of success on the merits" at trial to justify a preliminary injunction in favor of Waterproofing, and we find no fault with that assessment.

### III.

Because we have found no error in the magistrate's determination that Hydro-Stop terminated the Distribution Agreement without just cause, we find that the preliminary injunction was properly granted.

**Affirmed**.